Argued and submitted February 12, reversed and remanded December 17, 2014

John BROWN,
Bob Cassidy, Rich Cunningham,
Joann Ernst, and Ron Farmer,
as Commissioners of the
Eugene Water & Electric Board,
an Oregon municipal corporation,
*Plaintiffs-Respondents,*
*and*

SENECA SUSTAINABLE ENERGY, LLC,
an Oregon limited liability company,
*Intervenor-Respondent,*

*v.*

GUARD PUBLISHING COMPANY,
an Oregon corporation, dba Register-Guard,
*Defendant-Appellant,*
*and*

Alexander GARDNER,
as Lane County District Attorney,
*Defendant.*

Lane County Circuit Court
161026544; A149933

341 P3d 145

Jack L. Orchard argued the cause for appellant. With him on the briefs were Adele J. Ridenour and Ball Janik LLP.

Eric S. DeFreest argued the cause for respondents John Brown, Bob Cassidy, Rich Cunningham, Joann Ernst, and Ron Farmer. With him on the brief were Joel S. DeVore and Luvaas Cobb.

Rohn M. Roberts argued the cause for respondent Seneca Sustainable Energy, LLC. With him on the briefs were Aaron J. Noteboom and Arnold Gallagher PC.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Lagesen, Judge.*

DUNCAN, P. J.

---

* Haselton, C. J., *vice* Wollheim, S. J.

## DUNCAN, P. J.

This case involves a public records request by defendant Guard Publishing Company (dba Register-Guard), who sought disclosure of an energy purchase contract between respondents, the Commissioners of the Eugene Water & Electric Board (EWEB) and Seneca Sustainable Energy, LLC (Seneca). EWEB denied the records request and eventually initiated this action for injunctive and declaratory relief to establish that the contract, in its entirety, is exempt from disclosure under the Oregon's public records law, ORS 192.410 to 192.505. Among other exemptions, EWEB relied on ORS 192.502(26), which exempts from disclosure certain "[s]ensitive business, commercial or financial information" furnished to or developed by a public body who, like EWEB, is engaged in the business of providing electricity, if "disclosure of the information would cause a competitive disadvantage for the public body or its retail electricity customers."

Seneca intervened in the action and, along with EWEB, moved for summary judgment on the theory that the entire contract is exempt from disclosure under ORS 192.502(26). Register-Guard opposed their motions and filed its own cross-motion for summary judgment, arguing that EWEB had not carried its burden to demonstrate that all of the information within the contract—as opposed to the contract as a whole—is exempt from disclosure. The trial court ruled in favor of EWEB and Seneca and entered a judgment declaring that the entire contract is exempt, which Register-Guard now appeals. For the reasons that follow, we conclude that the summary judgment record permits competing inferences as to whether all of the information within the contract was "[s]ensitive business, commercial or financial information," the disclosure of which "would cause a competitive disadvantage for" EWEB or its retail customers. Accordingly, we reverse and remand.

## I. BACKGROUND

EWEB is a municipal utility that provides electricity service to customers in the Eugene area by contracting with entities that buy and sell wholesale energy. Seneca is a private company that owns and operates a facility that

generates biomass energy. In 2010, EWEB announced that it had entered into a contract with Seneca for the purchase of biomass-produced electricity. *See* ORS 261.348 (authorizing people's utility districts and municipal electric utilities to "enter into transactions * * * for the production, supply or delivery of electricity on an economic, dependable and cost-effective basis").[1] Register-Guard requested a copy of that contract from EWEB, but EWEB denied the request on the ground that the contract was exempt from the disclosure requirements of the public records law.

Register-Guard then petitioned the Lane County district attorney to review the contract to determine whether it could be withheld from public inspection. *See* ORS 192.460 (providing that avenue of review in certain circumstances for persons who are denied the right to inspect public records). After reviewing the contract, the district attorney ordered EWEB to disclose it. In response, EWEB and, later, Seneca as an intervenor, sought injunctive and declaratory relief from that order in the Lane County Circuit Court, alleging that the entire contract is exempt from disclosure under various provisions of the public records law and that EWEB was under no obligation to disclose any of its contents. *See* ORS 192.450(2) (requiring a public body to comply with a disclosure order within seven days of the order, unless the public body issues a notice of its intention to institute proceedings for injunctive or declaratory relief). EWEB and Seneca relied on, among other exemptions, ORS

---

[1] In full, ORS 261.348 provides:

"(1) Notwithstanding any other law, people's utility districts and municipal electric utilities may enter into transactions with other persons or entities for the production, supply or delivery of electricity on an economic, dependable and cost-effective basis, including financial products contracts and other service contracts that reduce the risk of economic losses in the transactions. This subsection does not authorize any transaction that:

"(a) Constitutes the investment of surplus funds for the purpose of receiving interest or other earnings from the investment; or

"(b) Is intended or useful for any purpose other than the production, supply or delivery of electricity on a cost-effective basis.

"(2) Nothing in subsection (1) of this section prohibits a people's utility district or a municipal electric utility from entering into any transaction for the acquisition, construction, improvement or equipping of a renewable energy facility or for the purchase or sale of electricity, electrical capacity or renewable energy certificates."

192.502(26), which exempts from disclosure the following "public records":

> *"Sensitive business, commercial or financial information* furnished to or developed by a public body engaged in the business of providing electricity or electricity services, if the information is directly related to a transaction described in ORS 261.348, or if the information is directly related to a bid, proposal or negotiations for the sale or purchase of electricity or electricity services, and disclosure of the information would cause a competitive disadvantage for the public body or its retail electricity customers. This subsection does not apply to cost-of-service studies used in the development or review of generally applicable rate schedules."

(Emphasis added.)

The parties then filed cross-motions for summary judgment that eventually focused on a relatively narrow question: whether, as EWEB and Seneca contended, the contract should be treated as exempt in its entirety or whether, as Register-Guard argued, EWEB was required to separate out, and disclose, any nonexempt material within the contract—in other words, whether EWEB was required to produce a redacted version of the contract. *See* ORS 192.505 ("If any public record contains material which is not exempt under ORS 192.501 and 192.502, as well as material which is exempt from disclosure, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination.").

In its summary judgment motion, Register-Guard explained its objection to EWEB and Seneca's "absolutist" position regarding disclosure:

> "The Court should be clear about The Register-Guard's position in this case, given EWEB's response. The Register-Guard has seen nothing from the actual contract * * *. Because EWEB has chosen to respond with claims of total confidentiality, The Register-Guard is neither able (nor required) to limit its request to specific portions of the contract. The Register-Guard is at a point where it does not know about what is actually included (or not) in the contract and will not be so informed until EWEB complies with ORS 192.505. In short, specific contentions about specific parts of the contract are premature. It is EWEB's responsibility under the

Public Records Law (not The Register-Guard's) to narrow the records disclosure issues. EWEB has chosen not to do so."

EWEB and Seneca, meanwhile, filed their own motions for summary judgment in which they argued that ORS 192.502(26) and other exemptions applied to "the entire [c]ontract" and that "EWEB is not required to separate 'non-exempt' from 'exempt' material under ORS 192.505." (Quoting Seneca's response and cross-motion for summary judgment.) In support of their motions, they submitted affidavits from Rick Re, the CEO and Senior Vice President of Seneca, and Clay Norris, EWEB's director of its Power Resources Division. In Re's affidavit, he averred that the contract contained "trade secrets," which Seneca and EWEB had agreed to keep (and had kept) confidential, and that disclosure of the contract would harm Seneca, as well as EWEB and its customers, because, among other reasons, public disclosure of the terms of the contract would disadvantage Seneca and EWEB when they negotiated future contracts with others:

"The Contract contains confidential and proprietary information of Seneca which are trade secrets and which if disclosed would cause substantial harm to Seneca and which would place Seneca at a competitive disadvantage with its competitors and suppliers in both the energy and forest product markets.

"As part of the negotiations and agreement, EWEB and Seneca agreed that the terms and conditions of the Contract will be submitted and kept as confidential. Under the Contract, EWEB is contractually obligated to Seneca to maintain the confidentiality of the Contract and the information contained therein.

"Seneca received comparable, competing offers from EWEB and a private entity to purchase its electricity. Seneca agreed to sell its electricity to EWEB rather than the private entity only after negotiating the confidentiality provisions of its agreement with EWEB, and reviewing the Public Records Laws and determining that the terms of the sale would be exempt from disclosure. If Seneca's review and analysis of the public records exemptions had led it to believe that the terms of the sale would have been subject to disclosure, Seneca very likely would not have sold its electricity to EWEB.

"EWEB and Seneca have strictly maintained the confidentiality of the Contract. To date, the Contract and its terms have never been disclosed to any party other than to select individuals at Seneca and EWEB and their legal representatives.

"*****

"Disclosure of the Contract will harm the public interest and would put EWEB and its customers at a competitive disadvantage because it will discourage Seneca, and other companies, from entering into public contracts with EWEB for the sale of power. For example, if the Contract were disclosed it would place Seneca at a competitive disadvantage in the purchase and sale of residual products such as bark, sawdust, planer shaving[s] and chips, also used for fuel at the renewable energy facility. The contracts for fuel supply are extremely competitive and are renegotiated every 90 days. If the price of electricity sold by Seneca becomes public, then fuel suppliers would be able to employ reverse calculations and determine the price threshold for fuel supply that they sell to Seneca's plant. Similarly, buyers of Seneca's residual products that, as an alternative, could be used as fuel for the renewable energy plant, will be able to compute the threshold at which it is economical for Seneca to sell to them instead of using Seneca's fuel for the renewable energy plant. Likewise, the renewable energy plant will also rely upon slash from surrounding timberland operations for fuel. Competitors for this fuel, armed with pricing information, will be able to determine Seneca's breakeven for purposes of outbidding Seneca for this fuel source. Consequently, disclosure would harm EWEB's ability to attract bidders, such as Seneca who knew their agreed upon contractual terms would be openly available to be used against them. A lack of bidders would increase the costs of energy to EWEB and its customers and adversely impact EWEB's ability to obtain sufficient and qualified suppliers of renewable energy as required by ORS Chapter 469A.

"Disclosure of the Contract will reveal EWEB's sensitive business, commercial and financial information to its competitors and other suppliers of electricity placing EWEB, and its customers, at a competitive disadvantage when bargaining or competing for electrical purchase or supply contracts. But for the disclosure, those competitors and suppliers would not otherwise know such sensitive information.

By the same token, EWEB's competitor and suppliers, who are privately owned, would not have to reveal the terms and conditions of their agreements placing them at a competitive advantage over EWEB and its customers."

(Paragraph numbering omitted.)

Norris's affidavit, meanwhile, included averments regarding negotiation of power purchase agreements:

"Negotiations for a power purchase agreement are very competitive in the energy marketplace involving the discussion and development of sensitive business, commercial and financial information, including trade secrets, which strive to culminate in a transaction for the purchase of energy by power purchase agreement containing negotiated terms and conditions tailored to the specific generation project and the needs of EWEB on behalf of its customers. At EWEB, these discussions and information are limited to key personnel who are involved in the power purchase transaction.

"The disclosure of the transaction sought by Guard Publishing will cause a competitive disadvantage to EWEB and affect its retail electric customers because energy developers do not wish to reveal their negotiable terms, limits and strategies in power purchase transactions by disclosure to the public and their competitors in the marketplace. Negotiations for power purchase transactions are multi-faceted, commonly including negotiation of operating conditions, qualifications to satisfy Oregon's Renewable Energy Act, environmental attributes such as renewable energy certificates, mitigation strategies, price calculation and seasonal variations, delivery requirements and other terms and conditions tailored to individual generation projects or EWEB needs.

"If power purchase transactions such as the EWEB-Seneca transaction were publicly disclosed it is probable that the generation developers would raise the price of their energy, be less inclined to negotiate certain terms and conditions, or choose not to enter power purchase transactions with EWEB."

(Paragraph numbering omitted.)

In reply to EWEB's and Seneca's submissions, Register-Guard offered, by way of a declaration from its

counsel, a table that identified seven "electric power purchase agreements between EWEB and various other renewable energy source vendors dating 2001-2010, which have previously been made available to The Register-Guard, along with references to specific types of information contained in such agreements."[2] Based, in part, on EWEB's disclosure of those agreements—some of which had been made available with redactions—Register-Guard argued in its reply brief that "[d]isclosure of information from [those] contracts was both contemplated and dealt with. Obviously, potential disclosures were not deterrents to contracting with EWEB."

At the summary judgment hearing, Register-Guard took the position, consistent with its briefing, that EWEB had "missed a step in this process" by refusing to disclose the whole document rather than redacting only those specific parts of the contract that are exempt from disclosure. With respect to ORS 192.502(26) specifically, which Register-Guard referred to as the "electricity generation exemption," it explained, in part:

> "Number 1, it has to be sensitive information of a business, financial, or commercial nature. *It's not everything in a contract.* It's limited to that type of information, and it must be sensitive.

> "Secondly, the exemption ends with the other qualifier, that disclosure of this sensitive information would create a competitive disadvantage to EWEB or to its customers. *And again, we're talking about the entire contract.* We're not talking about a specific portion of the contract that has been identified. We're talking about the entire contract, the release of any information from the contract, creating this competitive disadvantage. *And I think it too falls of the same problem with how does disclosure of a whole lot of this contract create any competitive disadvantage.*"

(Emphases added.)

Both EWEB and Seneca maintained at the hearing that the entire contract is exempt without any need for redaction. In fact, Seneca took the position that the issues

---

[2] Register-Guard offered to make complete copies of the documents available upon request and brought copies of those agreements to the summary judgment hearing, but the trial court declined to review them.

before the court had narrowed to a single question: "whether or not the Register-Guard is entitled to a redacted version of this contact," which "basically directs our focus on ORS 192.502(26)." That exemption, Seneca argued, provides "an unconditional exemption" that is not subject to redaction under ORS 192.505.

After taking the case under advisement, the trial court issued a letter opinion in which it agreed with EWEB and Seneca that the entire contract is exempt from disclosure under ORS 192.502(26). The court concluded that "EWEB and Seneca have gone to great lengths and exercised a high degree of discretion to keep the *actual* Contract and its agreed-upon terms confidential," thereby meeting EWEB's burden to show that the contract "in its entirety" is sensitive business, commercial, or financial information for purposes of the exemption. (Emphasis in original.) Furthermore, the court concluded, EWEB met its burden to show that disclosure of the contract would create a competitive disadvantage for "EWEB and its retail electricity customers because it could harm EWEB's ability to attract bidders, such as Seneca, thereby reducing competition for power purchase agreements." That is, the court ruled that "[a] competitive disadvantage is created for EWEB and its retail customers when private industry believes that its contracts will be disclosed as a matter of course pursuant to Oregon's Public Records Laws." "Additionally," the court explained, "disclosure of the Contract would reveal EWEB's sensitive business, commercial and financial information to its competitors and other suppliers of electricity, which would place EWEB and its customers at a competitive disadvantage over EWEB's privately-owned competitors, who are not subject to the Public Records Laws, when bargaining or competing for electrical purchase or supply contracts." Accordingly, the court ruled:

> "EWEB has met its burden to show that the Contract, in its entirety, should be exempt from disclosure pursuant to ORS 192.502(26). To be clear, the Court does not hold that all power purchase agreements between EWEB and a private entity that buys or sells wholesale electricity are categorically exempt pursuant to ORS 192.502(26). The

Court merely holds that, on the facts here, this Contract is exempt from disclosure pursuant to ORS 192.502(26)."[3]

The trial court entered a judgment that incorporated that letter ruling, which Register-Guard now appeals.

## II. ANALYSIS

### A. *Standard of Review*

In considering the merits of Register-Guard's appeal, our standard of review bears emphasis. ORS 192.490(1) provides that, in public records proceedings like this one, "[T]he court shall determine the matter *de novo* and the burden is on the public body to sustain its action." Register-Guard submits that we, too, review the case *de novo*, but that ignores the procedural posture of this case; the standard is actually more favorable to Register-Guard than that. Because this case is before us on the grant of a motion for summary judgment, we review the record to determine whether there are any genuine issues of material fact and whether EWEB and Seneca are entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); *see also Kluge v. Oregon State Bar*, 172 Or App 452, 457, 19 P3d 938 (2001) (explaining, in the context of a public records proceeding, that "we do not ignore the fact that this case is on appeal from a summary judgment" and "[c]onsequently, we review the summary judgment to determine whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law"). "That standard is met when, viewing the facts in the light most favorable to the nonmoving party, no reasonable [trier of fact] could return a verdict for that party." *Hagler v. Coastal Farm Holdings, Inc.*, 354 Or 132, 140, 309 P3d 1073 (2013).

### B. *Overview of the Exemption and the Redaction Requirement*

In light of our standard of review, the question framed on appeal is this: Do the facts, viewed in the light

---

[3] The trial court also stated that, "[b]ecause the Court finds that the contract is exempt, in its entirety, under ORS 192.502(26), the Court does not address [the] exemptions [in ORS 192.502(4) and ORS 192.501(2)]."

most favorable to Register-Guard, compel the conclusion that the entire contract is exempt from disclosure under ORS 192.502(26)? The answer turns on how that exemption functions in the context of Oregon's public records law.

Under Oregon law, "[e]very person has a right to inspect any public record of a public body in this state, except as otherwise expressly provided by ORS 192.501 to 192.505." ORS 192.420(1). A "public record" "includes *any writing that contains information relating to the conduct of the public's business,* including but not limited to court records, mortgages, and deed records, prepared, owned, used or retained by a public body regardless of physical form or characteristics." ORS 192.410(4)(a) (emphasis added). A "writing" "means handwriting, typewriting, printing, photographing and every means of recording, including letters, words, pictures, sounds, or symbols, or combination thereof, and all papers, maps, files, facsimiles or electronic recordings." ORS 192.410(6).

ORS 192.501 and ORS 192.502, in turn, identify certain "public records exempt from disclosure." ORS 192.501 (setting forth conditional exemptions); ORS 192.502 (setting forth unconditional exemptions). Under the statutory scheme, "disclosure is the rule. Exemptions from disclosure are to be narrowly construed." *Guard Publishing Co. v. Lane County School Dist.*, 310 Or 32, 37, 791 P2d 854 (1990). Moreover, a public body that withholds public records from disclosure has the burden of proving that exemptions apply. ORS 192.490(1); *Mail Tribune, Inc. v. Winters*, 236 Or App 91, 95, 237 P3d 831 (2010). "To satisfy that burden, a public body must establish exemptions from disclosure 'on an individualized basis.'" *Id.* at 95 (quoting *Guard Publishing Co.*, 310 Or at 39).

As will later prove important, each of the exemptions in ORS 192.502 is worded slightly differently. Some of the exemptions describe particular types of documents and categorically exempt those documents from disclosure. *E.g.,* ORS 192.502(32) (exempting county election security plans); ORS 192.502(24) (exempting, among other records, "[c]redit reports," "[p]roject appraisals," "[a]rticles of incorporation, partnership agreements and operating agreements," and

"[c]ommitment letters"); ORS 192.502(7), (15) (exempting certain "reports"). Other exemptions, however, are phrased in terms of particular types of data or information within public records. *E.g.*, ORS 192.502(3) ("Public body employee or volunteer addresses, Social Security numbers, dates of birth and telephone numbers contained in personnel records maintained by the public body that is the employer or the recipient of volunteer services."). Thus, although the definition of "public records"—and, by incorporation, the exemptions, including ORS 192.502(26)—are phrased in terms of whether a writing "contains" information related to public business, the specific exemptions themselves may apply to a writing in whole or in part.

The specific exemption at issue here, ORS 192.502(26), is phrased primarily in terms of "information" rather than in terms of specific types of documents. It exempts "the following public records" from disclosure:

> "*Sensitive business, commercial or financial information* furnished to or developed by a public body engaged in the business of providing electricity or electricity services, if *the information* is directly related to a transaction described in ORS 261.348, or if *the information* is directly related to a bid, proposal or negotiations for the sale or purchase of electricity or electricity services, and disclosure of *the information* would cause a competitive disadvantage for the public body or its retail electricity customers. This subsection does not apply to cost-of-service studies used in the development or review of generally applicable rate schedules."

(Emphases added.) For purposes of this case, that exemption has two relevant components: The information related to the electricity purchase (1) is "[s]ensitive business, commercial or financial information" and (2) "the disclosure of the information would cause a competitive disadvantage for the public body or its retail electricity customers."

As previously noted, depending on the nature of the exemption, it is possible for a single writing to contain information that qualifies for an exemption and information that does not. ORS 192.505 recognizes that possibility and provides that, "[i]f any public record contains material which is not exempt under ORS 192.501 and 192.502, as

well as material which is exempt from disclosure, the public body shall separate the exempt and nonexempt material and make the nonexempt material available for examination." Thus, ORS 192.505 provides important context for understanding and interpreting the scope of the disclosure exemptions in ORS 192.501 and ORS 192.502, including ORS 192.502(26). Read in context with ORS 192.505, ORS 192.502(26) exempts *only* that information within a writing that satisfies both requirements (sensitivity of information and competitive disadvantage from disclosure), and a public body is required to produce any material that does not.

C.  *Application of the Exemption on this Summary Judgment Record*

According to Register-Guard, the summary judgment record, which does not include the contract itself, is simply too sparse to compel a conclusion that the entire contract satisfies both requirements of the exemption—*i.e.*, that the entire contract is "[s]ensitive business, commercial or financial information" the disclosure of which "would cause a competitive disadvantage" to EWEB or its customers. In response, EWEB and Seneca argue that the affidavits of Re and Norris, which we previously set out in relevant part, 267 Or App at 557-59, are uncontroverted and establish that the contract itself has been kept confidential and that disclosure of the contract, which is the sum of negotiations, would create a competitive disadvantage to EWEB and its customers. Moreover, they argue that EWEB is under no obligation to engage in what Seneca describes as "ultra-redaction"—*i.e.*, an evaluation of each sentence or paragraph of the contract—thereby frustrating the purpose of the exemption, which they contend was enacted to protect precisely this type of document from disclosure. Having reviewed the record, we agree with Register-Guard that this case was not susceptible to summary judgment.

Initially, we are not persuaded by EWEB and Seneca's arguments that the contract is indivisible "information" for purposes of applying the exemption. EWEB and Seneca argue that, because the contract is the culmination of the parties' negotiations, all of the contract's provisions should be treated collectively as the "information"

that satisfies the exemption in this case. To the extent their argument is categorical—that every power purchase agreement is the relevant "information" for purposes of ORS 192.502(26)—we find virtually no support for that reading in the text, context, or legislative history of the exemption. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (describing our methodology for discerning the legislature's intended meaning for a statute). As we indicated when describing the public records disclosure scheme, ORS 192.502(26) is not phrased in terms of particular types of documents that are categorically exempt. Rather, the legislature repeatedly used the term "information" (four times) in ORS 192.502(26), and referred to "information" that is "directly related to a transaction described in ORS 261.348" or "directly related to a bid, proposal or negotiations for the sale or purchase of electricity or electricity services." That text, which describes what the information in the writing "relate[s] to," suggests that the legislature intended to create an exemption based on informational content rather than a categorical exemption for certain types of documents.

The focus on "information" rather than the type or nature of a document also suggests to us that the legislature understood the exemption to apply only to parts of a writing—contracts included. The word "information" is commonly understood to mean

> "something received or obtained through informing: such as **a** : knowledge communicated by others or obtained from investigation, study, or instruction **b** : knowledge of a particular event or situation : INTELLIGENCE, NEWS, ADVICES <latest ~ from the battle front> <securing ~ about conditions in the upper atmosphere> <~ bureau> **c** : facts or figures ready for communication or use as distinguished from those incorporated in a formally organized branch of knowledge : DATA <reliable source of ~>."

*Webster's Third New Int'l Dictionary* 1160 (unabridged ed 2002). A single writing such as a contract can include distinct and separable knowledge, intelligence, facts, or figures, and is susceptible to the type of redaction described in ORS 192.505. Indeed, when read in context with the redaction requirement and the definition of "public record" in ORS 192.410(4)(a), the most plausible interpretation of

ORS 192.502(26) is that it expressly shields only that "information" within the contract that satisfies the requirements of the exemption, but it does not shield other material in the contract that is reasonably severable from the exempt material.[4] So, in the absence of any persuasive indicator of contrary legislative intent,[5] we construe the exemption narrowly to restrict only the disclosure of information within the contract that satisfies the requirements of the exemption.[6] *Guard Publishing Co.*, 310 Or at 37 (stating that exemptions are construed narrowly and that "we keep in mind that we

---

[4] We appreciate that the obligation to separate exempt and nonexempt material can create difficulties parsing the contents of a document. In *Turner v. Reed*, 22 Or App 177, 186 n 8, 538 P2d 373 (1975), we noted the "variety of problems" that public bodies might face "in discharging their 'editing' responsibilities" under the statutory predecessor to ORS 192.505, including that "deleted portions of a document could possibly be inferred from the balance," and that "deletions may reach the point that it would be meaningless to disclose the balance." We explained that the statute should be interpreted to require "editing of documents when segregating exempt and nonexempt material is (1) reasonably possible; and (2) can be done so as to genuinely preserve the confidentiality of exempt material." *Id.* As we will explain, there has been no effort by the public body to consider redaction, so it is premature to consider, on this record, whether it is reasonably possible.

[5] The legislative history of ORS 192.502(26) is not particularly illuminating. The statute was spurred by impending deregulation of the electricity market, and was intended to provide some measure of confidentiality surrounding the terms and conditions of open-market energy purchases by community-owned utilities. Seneca points to legislators' statements to the effect that free market conditions would give rise to a need for confidentiality regarding the terms and pricing of contracts. However, nothing in those statements or the remainder of the legislative history resolves the threshold question before us: whether the legislature intended to prevent disclosure of *all* information within an energy contract, or whether the legislature considered various parts of the contract, such as specific terms and pricing, to be separate "information," thereby protecting only that material that has been kept confidential and would create a competitive disadvantage if disclosed.

[6] Our decision in *Port of Portland v. Ore. Center for Environ. Health*, 238 Or App 404, 243 P3d 102 (2010), *rev den*, 350 Or 230 (2011), does not assist EWEB and Seneca. In that case, we applied the exemption in ORS 192.502(9)(a), which exempts from disclosure "[p]ublic records or information the disclosure of which is prohibited or restricted or otherwise made confidential or privileged under Oregon law." We concluded that an entire joint-defense agreement was "a confidential communication" for purposes of the exemption, thereby "dispos[ing] of defendants' argument that the Port should separate exempt and nonexempt material under ORS 192.505." 238 Or App at 413. However, our conclusion was driven by the nature of that particular exemption, and the fact that, for purposes of the attorney-client privilege, "the document itself can constitute a confidential communication. *Cf. State v. Riddle*, 330 Or 471, 478, 8 P3d 980 (2000) (stating that expert opinions not derived from a communication between the expert and the client or attorney were not privileged, and a communication is an interchange of thoughts or opinions)." *Port of Portland*, 238 Or App at 411.

are considering an exception to the general rule favoring disclosure").

Our rejection of EWEB and Seneca's "all or nothing" theory—*i.e.*, that the contract must be considered a singular piece of "information" under ORS 192.502(26)—effectively resolves this appeal. That is because the affidavits of Re and Norris, which are the foundation for EWEB's and Seneca's remaining arguments, are worded in terms of the entire contract and say little about whether the disclosure of particular information within that contract would cause a competitive disadvantage to EWEB or its customers. For instance, Re averred that "[t]he Contract contains confidential and proprietary information of Seneca which are trade secrets and which if disclosed would cause substantial harm to Seneca and which would place Seneca at a competitive disadvantage with its competitors and suppliers in both the energy and forest product markets." However, viewed in the light most favorable to Register-Guard—and read in a way that is consistent with the arguments put forth in EWEB's and Seneca's summary judgment motions—the affidavit does not establish that the contract contains *only* that kind of information or other information that, if disclosed, would cause a competitive disadvantage.[7]

Norris's affidavit, likewise, is phrased in terms that reasonably can be read to refer to the risk of disclosure of the contract *in toto*. He averred that "[t]he disclosure of the transaction sought by Guard Publishing will cause a competitive disadvantage to EWEB and affect its retail electric customers because energy developers do not wish to reveal their negotiable terms, limits and strategies in power purchase transactions by disclosure to the public and

---

[7] We need not address whether the affidavits establish, as a matter of law, the first requirement of the exemption (that all of the information within the contract is "sensitive business, commercial or financial information"). *See In Defense of Animals v. OHSU*, 199 Or App 160, 172, 112 P3d 336 (2005) (holding that, for purposes of the exemption for "[s]ensitive business records or financial or commercial information of the Oregon Health and Science University that is not customarily provided to business competitors," "the adjective 'sensitive' [means] 'intended to be treated with a high degree of discretion'"). Even assuming that EWEB and Seneca are correct on that point, the affidavits do not compel only one conclusion on the second requirement: that disclosure of all of the information in the contract would cause a competitive disadvantage to EWEB and its customers.

their competitors in the marketplace." He further averred that "[n]egotiations for power purchase transactions are multi-faceted, commonly including negotiation of operating conditions, qualifications to satisfy Oregon's Renewable Energy Act, environmental attributes such as renewable energy certificates, mitigation strategies, price calculation and seasonal variations, delivery requirements and other terms and conditions tailored to individual generation projects or EWEB needs," and that, "[i]f power purchase transactions such as the EWEB-Seneca transaction were publicly disclosed it is probable that the generation developers would *raise the price of their energy, be less inclined to negotiate certain terms and conditions, or choose not to enter power purchase transactions with EWEB*." (Emphasis added.) As is the case with Re's affidavit, when Norris's averments are read in the light most favorable to Register-Guard, a reasonable trier of fact could understand Norris's affidavit to refer to the competitive disadvantage that would result if the contract as a whole or certain specific provisions were to be disclosed, but it says nothing about whether there is any nonexempt material in the contract.

Moreover, even assuming that the affidavits must be read as saying that competitive disadvantage would result from disclosure of *any* information within the contract, such broad averments about the effects of disclosure are indirectly controverted by common sense and the other energy contracts that Register-Guard introduced into the summary judgment record. A trier of fact could reasonably infer that, like other contracts, and like the other energy contracts in the record, the contract between EWEB and Seneca included at least some information—the identity of the signatories and the date of the contract, to name some of that material—that most likely could be disclosed without causing any competitive disadvantage to EWEB or its customers.

In sum, we conclude that the summary judgment record does not include enough specificity about the information within the contract itself to compel a factfinder to conclude that the entire contract is exempt from disclosure under ORS 192.502(26). We appreciate that EWEB and Seneca have addressed the contract in generalities in an

effort to protect the confidentiality of its contents; and, we further appreciate that *in camera* review of a requested document is not, in every case, a prerequisite to holding that the document is exempt from disclosure, *see* ORS 192.490(1) ("The court, on its own motion, *may* view the documents in camera before reaching a decision." (Emphasis added.)). For instance, certain documents—a list of home addresses or Social Security numbers of public employees—might announce their contents in a way that makes *in camera* review unnecessary. However, the contract in this case does not itself adequately convey the nature of the information within it, nor do the affidavits sufficiently describe the particular content of the document in a way that would allow a court to apply the exemption as a matter of law. Instead, EWEB's and Seneca's summary judgment motions essentially say, "Trust us, it's exempt." That is not how Oregon's public records law, or the summary judgment process, is intended to operate. *See Kluge*, 172 Or App at 458-59 (holding that the trial court "erred in relying solely upon the Bar's description of the contested records in reaching its decision to grant the Bar's summary judgment motion" because "[r]elying solely upon such descriptions eviscerates meaningful judicial review of agency determinations that specific public records are exempt from disclosure"; and that, where *in camera* review had not occurred, "[s]omething more than mere assertions concerning the contents of exempted records is needed in order to protect the public's right of disclosure in this instance" (footnote omitted)). Accordingly, we reverse and remand for further proceedings consistent with our holding.[8]

Reversed and remanded.

---

[8] EWEB and Seneca offer alternative bases on which to affirm the trial court's ruling, including that the contract is exempt from disclosure under ORS 192.501(2) and ORS 192.502(4). We decline to address those alternative bases on this record, which, as we have explained, does not even include the contract itself. Rather, we remand for the trial court to consider those issues in the first instance, perhaps after an *in camera* review of the contract itself.