Argued and submitted January 29, affirmed October 2, 2019

WINDMILL INNS OF AMERICA, INC.,
an Oregon corporation,
*Plaintiff-Appellant,*

*v.*

Jean Robert H. CAUVIN,
aka John Cauvin, an individual, and
Melinda Cauvin, an individual,
*Defendants-Respondents.*

Klamath County Circuit Court
1304655CV; A164868

450 P3d 1013

Plaintiff appeals limited judgments dismissing its claims on summary judgment. Plaintiff asserted claims for (1) specific performance of an employment agreement to compel the sale of stock at the contract price, (2) breach of contract for failure to convey the stock, (3) breach of contract for violating a restriction on the transfer or assignment of shares, (4) fraudulent misrepresentation, and (5) negligent misrepresentation. On appeal, plaintiff raises five assignments of error challenging the dismissal of each claim respectively. *Held*: As to the first two assignments of error, the employment agreement did not waive defendants' statutory rights, as dissenting shareholders, to be paid the "fair value" of their shares. ORS 60.554. The third assignment of error was not properly raised; and the fourth and fifth claims were not commenced within the statute of limitations.

Affirmed.

Benjamin M. Bloom, Judge.

Richard N. Sieving argued the cause for appellant. Also on the briefs were Michelle K. McClure and The Sieving Law Firm, A.P.C.

Erik J. Glatte argued the cause for respondents. Also on the brief were Huycke O'Connor Jarvis, LLP; and Robert A. Royal and Tiffany & Bosco, P.A.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

DeVORE, J.

Affirmed.

**DeVORE, J.**

Asserting five assignments of error, plaintiff Windmill Inns of America, Inc. (Windmill) appeals from limited judgments following orders on summary judgment to dismiss its five claims against defendants Cauvin. As to the first two assignments and claims, we determine that an employment agreement did not waive the Cauvins' rights to be paid, under Oregon statute, the "fair value" of their shares as dissenting shareholders rather than to be paid a lesser, contract value under the employment agreement. We do not reach the merits of the third assignment as to the third claim, because the factual and legal questions about application of the statute of limitations were not properly raised on appeal. As to the fourth and fifth assignments, we conclude that Windmill failed to bring its fourth and fifth claims for fraud and negligent misrepresentation within the time limited by statute. Windmill also appeals from a limited judgment awarding the Cauvins' attorney fees and costs. We affirm the limited judgments on the claims for the reasons that follow, and we affirm the limited judgment on attorney fees and costs without written discussion.[1]

## I.   FACTS

Because the issues are presented on several cross-motions for summary judgment, the record consists of documents submitted on all the motions. *WSB Investments, LLC v. Pronghorn Devel. Co., LLC,* 269 Or App 342, 355, 344 P3d 548 (2015). We view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Id.* at 354-55. We review the rulings on the Cauvins' motions to determine whether they are entitled to judgment as a matter of law. *Bergeron v. Aero Sales, Inc.,* 205 Or App 257, 261, 134 P3d 964, *rev den*, 341 Or 548 (2006).[2]

---

[1] Melinda Cauvin moved to dismiss plaintiff's appeal of the limited judgment on claims against her. The Appellate Commissioner denied the motion, and Melinda renews the motion here. We deny the motion for the same reasons as explained by the Appellate Commissioner in his order.

[2] Windmill urges this court to take *de novo* review because it sought equitable relief in its claim for specific performance. Such review would be inappropriate. The issues presented are not an occasion on which to reexamine findings of fact or to find facts anew on the record. Rather, when reviewing the trial court's

Although many things are disputed, the dispositive facts are not. Windmill is an Oregon corporation that owned and operated hotels in Oregon and Arizona. In December 1989, Windmill continued the employment of defendant John Cauvin as its president and chief executive officer under terms of a written agreement. With that agreement, he received 190 shares of Windmill's stock. The agreement provided that his shares could not be "sold, transferred, assigned, or otherwise disposed of" except by sale back to Windmill at the greater of $1,132 or a formula involving an increase in book value. The agreement further provided:

> "If Cauvin dies, retires, or if this Agreement is terminated for any reason, Cauvin agrees to sell, and [Windmill] agrees to purchase, all of Cauvin's [Windmill] stock upon the terms and conditions described above."

At the time, codefendant Melinda Cauvin was John Cauvin's wife. He, not she, signed the agreement.

In 2000, the Cauvins separated, and an Arizona court dissolved their marriage.[3] The Arizona court regarded the stock as property of a 15-year marriage, and the resulting dissolution decree awarded Melinda what became 90 shares of Windmill stock. In order to accomplish that property division, John provided the marital settlement agreement to a key principal in Windmill, Wendt, its corporate secretary and president of its controlling shareholder, Jeld-Wen, Inc. (Jeld-Wen). In late June 2000, John received Windmill's estimate of the value of his shares. Windmill did not then object to the disposition of shares to Melinda despite its knowledge of the ordered transfer.

From 2001 to early 2013, Windmill retained Melinda as its outside legal counsel. In 2007, Windmill declined her

---

rulings on cross-motions for summary judgment, we review for errors of law. *See Wieck v. Hostetter*, 274 Or App 457, 468 n 3, 362 P3d 254 (2015) ("Neither [the trial nor appellate] court, when considering whether a party is entitled to judgment as a matter of law at the summary-judgment stage of the case, is permitted to make factual findings or weigh the evidence, regardless of whether the underlying claim or requested relief is equitable in nature. *See Brown v. Guard Publishing Co.*, 267 Or App 552, 562, 341 P3d 145 (2014) (explaining that the court does not apply *de novo* review in the context of a motion for summary judgment) ***." (Citation omitted.)).

[3] For convenience, we refer to the defendants by their first names, rather than their last name, as do the Cauvins in their briefing.

initial request to redeem her stock, but, in January and February 2009, Windmill cooperated in redeeming 50 of her 90 shares at a price of $25,853 per share.[4] She retained 40 shares.

In December 2012, Windmill sent the Cauvins a notice of a special meeting of shareholders concerning the proposed liquidation of Windmill's assets. John and Melinda each gave notice of their rights as dissenting shareholders and demanded payment of the fair value of their shares under Oregon statutes. In March 2013, Windmill notified them of a special meeting of shareholders for the sale of its Ashland property. Again, the Cauvins gave notices of their rights as dissenting shareholders. Thereafter, in late April 2013, Windmill terminated the employment of John and Melinda, and, based on the termination of John's employment, Windmill demanded the return of the Cauvin stock according to the terms and price set by the 1989 agreement. They refused to do so on those terms.

## II.  LITIGATION

In June 2013, Windmill filed this action against the Cauvins, asserting: (1) a claim against both Cauvins for specific performance of the agreement to compel their sale of stock to Windmill at the contract price; (2) a claim against both Cauvins for breach of the agreement for failure to transfer the shares to Windmill; (3) a claim against John for his transfer of 90 shares to Melinda in 2000 in violation of the restriction on transfer or assignment of shares; (4) a claim against both Cauvins for fraudulent misrepresentation at the time of Melinda's redemption of 50 shares in 2009 by concealment from Windmill of the contract value of shares and demand for payment at a greater value; and (5) a negligent misrepresentation claim against both Cauvins for the same transaction.

In an early set of cross-motions for summary judgment, the trial court granted the Cauvins' motion in part, ruling that Windmill's fourth and fifth claims, commenced in 2013, were not commenced within two years of the 2009 share redemption as ORS 12.110(1) requires for tort

---

[4] The price was determined by Jeld-Wen's accounting department.

claims.[5] In a later set of cross-motions for summary judgment, the trial court granted the Cauvins' motions, ruling that the 1989 agreement did not waive the Cauvins' statutory right to dissent and receive fair value; that the Cauvins asserted dissenter rights before Windmill terminated John and asserted contract terms; and that Windmill had not commenced the third claim within six years of the 2000 transfer or assignment of shares, as ORS 12.080 requires for contract claims.[6] The trial court entered limited judgments for the Cauvins, dismissing all Windmill's claims and leaving for later determination the Cauvins' counterclaims for the fair value of their shares.[7] Thereafter, the trial court held several hearings on the Cauvins' petitions for attorney fees and costs and eventually entered a limited judgment on the petitions in their favor against Windmill for $861,206.05.[8]

_____

[5] In relevant part, ORS 12.110(1) provides:

"An action for * * * any injury to the person or rights of another, not arising on contract, and not especially enumerated in this chapter, shall be commenced within two years * * *."

[6] In relevant part, ORS 12.080 provides:

"An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070, 12.110 and 12.135 and except as otherwise provided in ORS 72.7250;

"* * * * *

"shall be commenced within six years."

[7] The trial court entered limited judgments on April 24, 2017, and again on May 17, 2017. The earlier limited judgment was based on summary judgment rulings that favored both defendants; the later limited judgment was based on prior rulings as well as Melinda's argument that she was not a party to the 1989 agreement.

[8] As noted, we affirm the appeal of the limited judgment on attorney fees without discussion. We do so on the merits, rather than as a matter of appellate jurisdiction. See *Emmert Industrial Corp. v. Douglass*, 130 Or App 267, 269, 881 P2d 827, *rev den*, 320 Or 325 (1994) (we are required to consider matters of appellate jurisdiction on our own motion). The limited judgment on attorney fees was entered pursuant to the change, effective January 1, 2016, adopting ORCP 68 C(5)(b)(ii), which permits entry of a limited judgment for attorney fees after a preceding limited judgment on the merits. Council on Court Procedures, *2013-2015 Biennium History Materials*, Dec 6, 2014, Minutes 15-16, 19, http://counciloncourtprocedures.org (accessed Sept 25, 2019); Council on Court Procedures, *2013-2015 Biennium History Materials*, Dec 6, 2014, Staff Comments to Amendments to Oregon Rules of Civil Procedures 15, http://counciloncourtprocedures.org (accessed Sept 25, 2019) (amendment authorizes the court to exercise discretion to award attorney fees or costs in a limited judgment after a preceding limited judgment affecting fewer than all the parties or claims). That change avoids the previous difficulty with a supplemental judgment for attorney fees without a preceding general judgment. *See Hooker Creek v. Central Oregon Land Development*,

On appeal, Windmill challenges the dismissal of each claim. As to the first two claims, Windmill argues that John waived dissenters' rights to fair value by accepting the restrictive terms of the 1989 agreement. Windmill argues that Melinda is bound to those terms because she helped her former husband negotiate and she had knowledge of the agreement. As to the third claim, Windmill argues in its opening brief that, because John transferred 90 of his shares to Melinda in 2000 pursuant to a marital settlement agreement, he voluntarily transferred shares in violation of the restriction in the 1989 agreement. In its opening brief, Windmill did not address the issue involving the statute of limitations. In its reply brief, Windmill shifted arguments, asserting that John's transfer of shares did not occur until 2009—within the limitation period for a contract claim. On the fourth and fifth claims, Windmill argues that its representative in the 2009 negotiations was unaware of the contract's limit on stock value, such that it did not discover Melinda's alleged concealment of contract value and misrepresentation about entitlement to a greater value. We address those arguments in turn.

## III.   DISSENTERS' RIGHTS PRESERVED

At the time of the 1989 agreement, the particular statutes on which we rely were the same as they are today. In relevant part, ORS 60.167(1) provided:

"The articles of incorporation, bylaws, agreements among shareholders or agreements between shareholders and the corporation may impose restrictions on the transfer or registration of transfer of shares of the corporation."[9]

---

279 Or App 117, 123, 380 P3d 304 (2016) (trial court lacks authority to enter a supplemental judgment for fees without a preceding general judgment); *Eagle-Air Estates Homeowners Assn., Inc. v. Haphey*, 272 Or App 651, 653, 354 P3d 766 (2015), *rev den*, 359 Or 166 (2016) (same); *White v. Vogt,* 258 Or App 130, 144, 308 P3d 356 (2013) (same); *Interstate Roofing, Inc. v. Springville Corp.*, 217 Or App 412, 426-27, 177 P3d 1, *adh'd to as modified on recons*, 220 Or App 671, 188 P3d 359, *adh'd to as modified on recons*, 224 Or App 94, 197 P3d 27 (2008), *aff'd in part and rev'd in part on other grounds*, 347 Or 144, 218 P3d 113 (2009) (same).

   [9]  Although not relevant to the parties on these facts, ORS 60.167(2) provides:

"A restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transferee of the holder if the restriction is authorized by this section and its existence is noted conspicuously on the front or back of the certificate or is contained in the information

A restriction like that in the 1989 agreement would be unremarkable. Oregon statutes allow such restrictions but also provide safeguards for dissenting shareholders. First, ORS 60.534(1) provides:

> "A corporation may sell, lease, exchange or otherwise dispose of all or substantially all of its property, with or without the goodwill, *other than in the usual and regular course of business*, on the terms and conditions and for the consideration determined by the corporation's board of directors, if the board of directors proposes and its shareholders approve the proposed transaction."

(Emphasis added.) In order for a transaction to be authorized, among other things, the shareholders must vote to approve the transaction and, before that occurs, the corporation must notify each shareholder of the proposed shareholders' meeting. ORS 60.534(2)(b). The notice must advise that the purpose of the meeting is to consider the sale, lease, exchange, or other disposition of all or substantially all of the corporation's property. ORS 60.534(4). In relevant part, ORS 60.554(1) provides:

> "[A] shareholder is entitled to dissent from, and obtain payment of the fair value of the shareholder's shares in the event of, any of the following corporate acts:
>
> "* * * * *
>
> "(c)   Consummation of a sale or exchange of all or substantially all of the property of the corporation other than in the usual and regular course of business, if the shareholder is entitled to vote on the sale or exchange, including a sale in dissolution * * *."

In this case, no one disputes that the circumstances were "other than in the usual and regular course of business," and, appropriately, Windmill gave notice to the Cauvins of their rights as potential dissenting shareholders. The central issue, then, is whether the general terms of the 1989 agreement served to waive the statutory rights afforded

statement required by ORS 60.164 (2). Unless so noted, a restriction is not enforceable against a person who has no knowledge of the restriction."

The stock certificates did not bear language reflecting the restriction on transferability. As a signator to the 1989 agreement, John is understood to have knowledge of the restriction.

by ORS 60.554 to receive "fair value of the shareholder's shares."

     In Windmill's view, the Cauvins' demands that the corporation repurchase their shares falls within the broad terms of the agreement's restrictive clause, which provides for the sale of their shares to Windmill "at any time." As noted, Paragraph 2.2 of that agreement provides, in part,

> "Cauvin agrees that [Windmill] stock may not be sold, transferred, assigned or otherwise disposed of unless by sale to [Windmill] and that notice of this restriction shall be placed on his stock certificate. At any time, Cauvin may offer to sell any amount of his [Windmill] stock back to [Windmill]. [Windmill] agrees to purchase any share of [Windmill] stock offered by Cauvin for the greater of the following two [contract] amounts * * *."

Windmill argues that this provision applies, because Windmill terminated John's employment, as contemplated in the following language:

> "If Cauvin dies, retires, or if this Agreement is terminated for any reason, Cauvin agrees to sell, and [Windmill] agrees to purchase, all of Cauvin's [Windmill] stock upon the terms and conditions described above."

Windmill insists that those provisions control and should be understood to waive the Cauvins' rights as dissenting shareholders. The Cauvins' response is twofold: (1) They did not waive their statutory rights, and (2) they invoked those rights in December 2012 and early April 2013, before Windmill terminated John in late April 2013.

     As a preliminary matter, we note that we review this case, involving an agreement reached in 1989, without considering current ORS 60.265, which addresses shareholder agreements that are contrary to other provisions of ORS chapter 60. That statute was adopted in 1993. Or Laws 1993, ch 403, § 12. Presumably, an agreement denying dissenters' rights could be an agreement that is contrary to ORS chapter 60.[10] We find it to be unnecessary to resolve the

_____

[10] Among other things, today's ORS 60.265(2) would require the written consent of all shareholders to an agreement inconsistent with ORS chapter 60 and

application of today's ORS 60.265 to this case—a case made unique by an agreement predating adoption of the statute—because we conclude that this agreement does not waive dissenters' rights.

Generally, Windmill is correct that a statutory right can be waived, but "[t]o make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part." *DK Investment Co. v. Inter-Pacific Development Co.*, 195 Or App 256, 263, 97 P3d 675 (2004) (quoting *McMillan v. Montgomery et al.*, 121 Or 28, 32-33, 253 P 879 (1927) (brackets in *DK Investment Co.*)). To better understand, we look to an application of that statement.

The Oregon Supreme Court addressed the subject of waiver of statutory rights in a case involving collective bargaining agreements where, like here, the statutes govern the rights and duties of the parties. In *Assn. of Oregon Corrections Emp. v. State of Oregon*, 353 Or 170, 295 P3d 38 (2013), the Department of Corrections changed employees' scheduled days off and shift times without first engaging in collective bargaining. The department contended that its agreement with the employee union expressly permitted its unilateral action to "set the work schedules." *Id*. at 172-73. Therefore, the department concluded that the employees had waived their right to bargain over schedules. The Court of Appeals agreed, but the Supreme Court did not. Quoting the cautionary words from another decision, our Supreme Court recited:

> "'[W]e will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be clear and unmistakable.'"

---

could be valid only for 10 years unless otherwise provided. Defendants argue that Windmill's controlling shareholder, Jeld-Wen, did not itself sign the 1989 agreement and that the agreement is more than 10 years old. Windmill argues that ORS 60.265 cannot apply to this 1989 agreement, because that statute was adopted in 1993. Windmill contends that, because no such statute existed in 1989, nothing *prohibits* an agreement restricting the value and transfer of shares, even under circumstances that trigger dissenters' rights. Taking the opposite view, the Cauvins argue that the absence of a provision like ORS 60.265 in 1989 means that nothing *permits* an agreement restricting the value and transfer of shares contrary to dissenters' rights.

*Id*. at 179 (quoting *Metropolitan Edison Co. v. NLRB*, 460 US 693, 708, 103 S Ct 1467, 75 L Ed 2d 387 (1983)). Summarizing the law, the court recounted:

> "The general rule in Oregon is that, although waivers of constitutional and statutory rights may be expressed through contract terms, those terms must clearly indicate an intention to renounce a known privilege or power. Under Oregon law, a waiver is the intentional relinquishment of a known right. To make out a case of waiver of a legal right there must be a clear, unequivocal, and decisive act of a party showing such a purpose."

*Id*. at 183 (internal citations and quotation marks omitted). The court concluded that the Employment Relations Board did not err in rejecting the department's waiver defense. *Id*.

Given that standard for waiver of a statutory right, we conclude that the 1989 agreement did not clearly and unequivocally express a waiver of the statutory right to dissent and to receive fair value of shares in the circumstance in which a dissenter's rights are triggered. Our conclusion is consistent with the conclusions of other courts in similar cases. *See, e.g.*, *In re 75,629 Shares of Common Stock of Trapp Family Lodge, Inc.*, 169 Vt 82, 91-92, 725 A2d 927, 934-35 (1999) (shareholder agreement for book value did not apply to a fair value determination of dissenters' rights because the agreement did not so provide); *Hansen v. 75 Ranch Co.*, 288 Mont 310, 318, 957 P2d 32, 37 (1998) (stockholders' agreement did not contemplate a fundamental change in the corporation and did not waive dissenters' rights under statute); *Matter of Pace Photographers (Rosen)*, 71 NY2d 737, 747, 525 NE2d 713 (1988) (in the absence of explicit terms, a shareholders' agreement does not control a shareholder's statutory right to fair value). Even in the ordinary terms of waiver, the agreement does not reflect an intentional relinquishment of a known right. The price-restrictive language in the agreement contemplates situations in which John might voluntarily choose to sell his shares in the ordinary course of events or in which he (or his estate) is compelled to sell his shares when John dies, retires, or is terminated. Here, before his termination, Windmill proposed disposition of its assets and recognized the rights of dissenting shareholders by sending the notice required by ORS 60.534(2)(b);

and, before his termination, the Cauvins duly invoked their dissenters' rights under Oregon law. *See In re Dissolution of Penepent Corp., Inc.*, 96 NY2d 186, 192-93, 750 NE2d 47, 50-51 (2001) (shareholder's election to be paid statutory fair value occurred before the buy-out provision in the shareholder agreement became enforceable). Because no waiver occurred, the trial court did not err in granting summary judgment to the Cauvins and dismissing Windmill's first two claims.

## IV.   THIRD CLAIM PROBLEMS

In its third assignment of error, Windmill challenges the dismissal of its third claim. The trial court dismissed the third claim because Windmill failed to bring the claim within six years as required by ORS 12.080.[11] The third claim alleged that, when John transferred 90 shares to Melinda in 2000, he breached the restriction against conveying stock to anyone other than Windmill. We do not reach the merits of Windmill's third assignment for procedural reasons.

Windmill's opening brief and assignment of error on the third claim did not effectively raise the limitations issue. Windmill assigned error, asserting:

> "The trial court committed reversible error in granting summary judgment on Appellant's breach of contract claims against Respondent John Cauvin because the Employment Agreement expressly prohibited the transfer or assignment of Mr. Cauvin's shares in Windmill."

In its argument, Windmill asserted that a "disputed issue of material fact exists as to *whether* John Cauvin breached his Employment Agreement by transferring his Windmill stock to Melinda Cauvin." (Emphasis added.) In its opening brief, Windmill did not argue that there was a dispute of material fact as to *when* John transferred his shares to Melinda. Instead, Windmill repeatedly stated in its opening brief

---

[11] That ruling was unrelated to the trial court's ruling on the first two claims. Windmill argues that the "trial court's analysis on the enforceability of the Employment Agreement infected its summary judgment rulings" on the first *three* claims. Unlike the first two claims, however, the third claim did not involve a conflict between the contract's price and a dissenter's right to fair value.

that the transfer occurred in 2000.[12] Windmill's statement of fact was consistent with its allegation in its third claim that "in breach of his Employment Agreement, Mr. Cauvin transferred ninety (90) shares of stock to Ms. Cauvin *on August 25, 2000.*" (Emphasis added.) In other words, Windmill's opening brief only argued that, because the facts permitted the conclusion that a breach occurred, the claim should not have been dismissed on summary judgment. Windmill did not argue that the breach occurred within the limitation period.

In response, the Cauvins observed that Windmill had not actually disputed the trial court's ruling that Windmill's allegation of a breach, occurring with the transfer in 2000, was outside the six-year limitation period of ORS 12.080. In its reply brief, Windmill argued for the first time on appeal that the transfer did not occur until 2009 when Melinda redeemed 50 shares—which would bring the complaint within the six-year limitation period. In support, Windmill referred to the Cauvins' answer and to Melinda's references to "formal transfer" of shares in Windmill's records in 2009.

We recognize that Windmill did make such an argument in the trial court. We also recognize that, in the trial court, John had replied that the effective transfer of shares occurred in 2000 with the dissolution decree, that events in 2009 were only the "formal issuance" of certificates for purposes of the corporate books, and that the formal issuance of certificates to Melinda was not required.[13]

---

[12] Windmill argued in its opening brief:

"*On August 25, 2000, when John Cauvin's stock was transferred to Melinda Cauvin*, the Cauvins were aware Paragraph 2.2 of the Employment Agreement restricted the transfer of the Windmill stock."

(Emphasis added.) Likewise, Windmill argued in its opening brief:

"Prior to *transferring shares to Melinda Cauvin in 2000*, John Cauvin and Melinda Cauvin negotiated the terms of his 1989 Employment Agreement and subsequent amendments."

(Emphasis added.)

[13] John relied on ORS 60.161(1), which provided:

"Shares may be but are not required to be represented by certificates. Unless this chapter or another statute expressly provides otherwise, the rights and obligations of shareholders are identical whether or not their shares are represented by certificates."

Those issues, however, are not properly presented on appeal, because it was only in its reply brief that Windmill raised factual and legal questions about when an interest in the stock was transferred—that is, when breach occurred. As a consequence, the limitations issue was not developed, because the Cauvins did not have the chance to respond on appeal. In short, Windmill did not properly assign error to the trial court's ruling on the application of the statute of limitations to the third claim. *See* ORAP 5.45 (assignments of error are required in all opening briefs of appellants; they must identify the ruling challenged; and no matter claimed as error will be considered on appeal unless it is properly assigned in the opening brief); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-82, 823 P2d 956 (1991) (unless plain error, appellate court will not review new issue raised in reply brief).

Although this court has discretion to consider a claim of error that is raised for the first time in a reply brief, our general rule is that we decline to do so. *See Clinical Research Institute v. Kemper Ins. Co.*, 191 Or App 595, 608-09, 84 P3d 147 (2004) (a separate theory advanced in a reply brief simply comes too late). Windmill has not supplied any reasons to depart from that general rule in this case.

## V.   UNTIMELY TORT CLAIMS

In its fourth and fifth assignments, Windmill contends that the trial court erred in dismissing the claims for fraud and negligent misrepresentation based on the statute of limitations, ORS 12.110(1). Windmill argues that, at the time Melinda redeemed 50 shares in 2009, it had not discovered her concealment of the contract price of shares and her misrepresentation that she was entitled to a greater value. Windmill argues that the "Windmill representative *** lacked *actual knowledge* that the stock value was limited by contract." (Emphasis in original.) For that particular statement, Windmill provides no reference to the record.[14] The trial court had found, "Plaintiff has presented no affidavit by a representative or principal of the corporation stating when it became aware of the alleged fraud."

---

[14] Instead, Windmill refers to Melinda's deposition testimony that she did not bring up the 1989 agreement in her discussions with Windmill in 2009.

The record does show that Windmill's key representative, Wendt—its corporate secretary and president of its controlling shareholder—had signed the 1989 agreement with John and had drafted the handwritten 2009 agreement with Melinda. Windmill's controlling shareholder, Jeld-Wen, kept the original 1989 agreement in its possession.

On that record, where Windmill claims ignorance of its own agreement, we agree with the trial court that Windmill failed to offer evidence to permit a reasonable inference that it did not know the contract price. In other words, it did not offer evidence to create a genuine issue of material fact in response to the Cauvins' evidence that Windmill reasonably should have discovered fraudulent concealment or negligent misrepresentation, if any, in 2009 at the time it agreed to pay Melinda more than the contract price for 50 shares of stock. *See Forest Grove Brick v. Strickland*, 277 Or 81, 85-86, 559 P2d 502 (1977) (discovery is objective, not subjective, and involves imputed or constructive knowledge); *State Farm Fire v. Sevier*, 272 Or 278, 288, 537 P2d 88 (1975) (a corporation is charged with knowledge of facts that its agents learn within the scope of their employment); *see also Greene v. Legacy Emanuel Hospital,* 335 Or 115, 123, 60 P3d 535 (2002) (the statutory period begins to run when the plaintiff, exercising reasonable care, should have discovered the injury, including learning facts that an inquiry would have disclosed); *Padrick v. Lyons*, 277 Or App 455, 467-68, 372 P3d 528, *rev den*, 360 Or 26 (2016) (principals knew or in the exercise of reasonable care, should have known facts that would have made a reasonable person aware of claim). The trial court did not err in granting the Cauvins' motions for summary judgment to dismiss Windmill's tort claims.

## VI.  CONCLUSION

In sum, we conclude that the trial court did not err in granting summary judgment dismissing Windmill's claims and enforcing the Cauvins' rights as dissenting shareholders to be paid the "fair value" of their shares under ORS 60.554(1). We do not review Windmill's challenge to the trial court's ruling that its third claim is barred by ORS 12.080. And, we conclude that the trial court did not err in dismissing Windmill's tort claims as barred by ORS 12.110.

We affirm the limited judgments on the claims and the limited judgment on attorney fees and costs.

Affirmed.