Argued and submitted November 18, 2020, affirmed March 17, 2021

SKY LAKES MEDICAL CENTER, INC.,
*Plaintiff-Appellant,*

*v.*

OREGON DEPARTMENT OF HUMAN SERVICES,
an Oregon administrative agency; and
Oregon Department of Administrative Services,
an Oregon administrative agency,
*Defendants-Respondents.*

Klamath County Circuit Court
18CV37324; A171215

484 P3d 1107

Petitioner seeks judicial review of an Oregon Department of Administrative Services (DAS) determination of compatibility with local land use laws and award of a build-to-suit lease for an Oregon Department of Human Services building in Klamath Falls. Petitioner argues that DAS failed to make the requisite findings that the proposed state use was compatible with local land use regulations. Additionally, petitioner argues that the circuit court erred by denying a motion for leave to amend the complaint to include review of alleged errors in the procurement process. *Held*: The circuit court properly deferred to DAS's interpretation of its own administrative rules because the interpretations were plausible and not inconsistent with the rules, the applicable context, or any other source of law. Specifically, DAS's determination that it was allowed, under its existing rules, to accept a lease covenant from the site developer that promised that any required local government approvals would be secured before the lease was effective, was entitled to judicial deference. Finally, the circuit court did not err in denying the motion to amend the petition for review because the amended claim was untimely and could not relate back to the original claim under ORCP 23.

Affirmed.

Marci Warner Adkisson, Judge.

Christopher Swift argued the cause for appellant. Also on the briefs were John A. DiLorenzo, Jr., Evan R. Christopher, and Davis Wright Tremaine LLP.

Denise Fjordbeck, Attorney-in-Charge, Civil/Administrative Appeals, argued the cause and filed the brief for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

SERCOMBE, S. J.

Affirmed.

**SERCOMBE, S. J.**

This case concerns whether the Department of Administrative Services (DAS) properly determined that the uses allowed in a build-to-suit lease are compatible with local land use laws. The determination was required by ORS 197.180, which sets out state agency land use planning responsibilities, and DAS's rule that implements that statute, OAR 125-110-0001, which requires findings of compatibility with local land use regulations before undertaking a state office facility lease. Sky Lakes Medical Center, Inc. (Sky Lakes) petitioned Klamath County Circuit Court for judicial review of DAS's findings that justified a build-to-suit lease under those standards. The circuit court concluded that DAS's findings and approval of the lease complied with ORS 197.180 and OAR 125-110-0001. After so concluding, the court denied Sky Lakes's motion to amend its petition to add a claim that challenged the award of the lease to Klamath Falls Holdings, LLC (KFH) because of claimed errors in the procurement process.

On review, Sky Lakes challenges both rulings of the circuit court. We review DAS's interpretation and application of OAR 125-110-0001 under the standard set out in *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (an agency interpretation of its own rule is entitled to judicial deference if the interpretation is "plausible" and not "inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law"). We conclude that the circuit court properly deferred to DAS's interpretation of its rule. We also conclude that the court did not err in denying the motion to amend the petition because the amended claim was untimely. Accordingly, we affirm.

The facts in the circuit court record are not disputed. In May 2017, DAS issued a request for information from developers, soliciting proposals to build and lease a building to the Department of Human Services (DHS) in Klamath Falls. The desired facility would be "for general office use and client services delivery." Several developers responded, including Sky Lakes and KFH.

Following the initial responses, DAS sought additional information from five respondents through individual requests for proposal (RFPs), including a demand for documentation of whether the site "is free of any easements or encumbrances which would prohibit, preclude or complicate development" of the property for the intended use. KFH responded, in part:

> "The proposed site is zoned Mixed Use. As with most zones in Klamath Falls, a Conditional Use Permit (CUP) will be required for Government Office construction (the only zones where a CUP is not required are the Public Facility zone where Government Office is outright permitted, and the Industrial and Special Reserve zones where Government Office is prohibited). The Conditional Use Permit process is designed to ensure that the proposed development is compatible with the surrounding land uses. We are confident that our proposal will satisfy the City of Klamath Falls' CUP requirements."

DAS adopted this explanation, determining that it was "acceptable."

On February 23, 2018, after negotiating on the specifics of each proposal, DAS issued a notice of award for the new DHS offices, selecting KFH's submission as the proposal that "optimally meets all criteria and delivers the highest value for Oregon's taxpayers." The notice justified the award based on the low rental rate, availability of geothermal energy, use of sustainable construction materials, location on a downtown brownfield site, proximity to public transportation and safe and abundant public accessibility.[1]

On March 27, 2018, DHS and KFH entered into a lease agreement, outlining the terms of an agreement

---

[1] DAS exercised authority to procure and approve the lease under ORS 276.428, which provides:

"(1) Notwithstanding the provisions of any other law, any lease or rental agreement for office quarters must be approved by the Oregon Department of Administrative Services prior to execution.

"(2) The Oregon Department of Administrative Services shall exercise supervisory authority over all leases or rental agreements for office quarters for all state agencies."

*See also* OAR 125-120-0070(2) ("No lease or rental agreement shall be binding upon the state or any agency unless such lease or rental agreement has been approved by the [Facilities Division of DAS] in accordance with ORS 276.428.").

for the construction and leasing of a building by KFH for DHS's use. DAS approved the lease agreement, including approving a "covenant" in the lease that, "as of the Rental Commencement Date [set to start after construction of the building], the Premises are in compliance with any and all applicable federal, state and local laws and ordinances." The rental commencement date was estimated to be June 1, 2020.

Five months later, Sky Lakes petitioned for judicial review of the lease under ORS 183.484 and for relief under ORS 183.490. ORS 183.484 provides for judicial review of agency orders not arising from a contested case and specifies the grounds for the circuit court to affirm, reverse, or remand the order under review. Subsection (2) of the statute requires that the petition be filed "within 60 days only following the date the order is served."

Sky Lakes pleaded that DAS "failed to make the required finding that the agreement complies with acknowledged comprehensive plans and land use regulations." Sky Lakes asserted that the finding was required by ORS 197.180, which requires state agencies to take actions "in a manner compatible with acknowledged comprehensive plans and land use regulations,"[2] and OAR 125-110-0001, a DAS rule that specifies the obligations of the agency to find compatibility with local land use laws in order "to approve or undertake a project" under the State Office Facility Leasing Program.

In its initial petition for review, Sky Lakes did not seek reversal or remand of the lease approval under ORS 183.484. Instead, Sky Lakes prayed for relief under ORS

---

[2] ORS 197.180(1) provides:

"*** [S]tate agencies shall carry out their planning duties, powers and responsibilities and take actions that are authorized by law with respect to programs affecting land use:

"(a) In compliance with the goals, rules implementing the goals and rules implementing this section; and

"(b) In a manner compatible with acknowledged comprehensive plans and land use regulations."

*See also* OAR 125-120-0060 ("All facility siting shall comply with local land use plans *** pursuant to Department of Administrative Services' OAR 125-110-0001 (the Land Use Coordination Rule).").

183.490. That statute allows a court when reviewing an order not in a contested case under ORS 183.484, to "compel an agency to act where it has unlawfully refused to act or make a decision or unreasonably delayed taking action or making a decision." Sky Lakes sought to compel DAS to make the findings required by OAR 125-110-0001.[3]

On October 4, 2018, DAS approved an amendment to the lease between KFH and DHS. The amendment expanded the size of the proposed office building and proportionately increased the rent. It also adopted land use compatibility findings. Those adopted findings concluded that DAS had sufficiently complied with OAR 125-110-0001 by (1) DAS's approval of KFH's documentation of zoning consistency in the procurement process, (2) the requirement of a conditional use permit as part of completion of the project, and (3) KFH's covenant in the lease that the premises will comply with "all applicable *** local laws and ordinances" as of the "Rental Commencement Date" (beginning after completion of the project).

In November 2018, Sky Lakes filed an amended petition for review reiterating its compelled findings claim under ORS 183.490 and seeking to set aside the amended lease agreement because DAS "failed to make required land use and compatibility findings" as required by ORS 197.180 and OAR 125-110-0001. The parties cross-moved for summary judgment and, shortly before the hearing on the motions, Sky Lakes moved for leave to file a second amended petition for review, seeking review over DAS's action awarding KFH the right to develop and lease the property, and demanding relief because of errors in the "leasing process":

---

[3] DAS asserted below, and renews its contention on review, that the petition for review was untimely because it was filed more than 60 days after delivery of the lease approval. Sky Lakes argues that a review claim seeking the compulsion of findings under ORS 183.490 persists until those findings are adopted, even well after the agency action that necessitated the findings. DAS responds that its obligation to adopt findings arose from the action approving the lease and that review should be obtained within 60 days of that action. DAS's contention is consistent with the text of ORS 183.490 ("The court may, *upon petition as described in ORS 183.484*, compel an agency to act ***." (Emphasis added.)). We need not determine the timeliness of the petition for review, however, since Sky Lakes does not contest the reviewing court's dismissal of the ORS 183.490 claim asserted in the petition for review. The court concluded that the agency had adopted findings and that there was nothing to compel.

"[DAS's and DHS's] grounds for selecting the [KFH's] proposal over alternative proposals, including each of the grounds stated in the Notice of Award, were legally erroneous, constituted an abuse of discretion, or were not supported by substantial evidence in the record."

The circuit court denied Sky Lakes's summary judgment motion and allowed the summary judgment motion filed by DAS and DHS. The court determined that DAS had not refused to make land use compatibility findings and that relief was not warranted under ORS 183.490. The court further concluded that DAS had made findings in the RFP process and in the amended lease that satisfied its obligation to make land use compatibility determinations that were consistent with OAR 125-110-0001. Finally, the court ruled that the claims in the second amended petition were "moot" since the "legal analysis and conclusions [on the merits of the amended petition] would be the same as for the [f]irst [a]mended [p]etition," and it denied the motion for leave to file the second amended petition.

As noted, DAS's obligation to determine that a lease project is consistent with local land use regulations derives from ORS 197.180 and OAR 125-110-0001. Under subsection (2) of OAR 125-110-0001, in order to "approve or undertake a project" under the State Office Facility Leasing Program,

"[DAS] shall find that the project complies with the Statewide Planning Goals and is compatible with acknowledged city and county comprehensive plans and land use regulations. To make its goal compliance and plan compatibility findings, [DAS] shall comply with sections (2) - (6) of this rule ***."

Subsection (4) provides that DAS makes its compatibility findings "based on information provided to the Department by the project's lessor or developer." The rule then requires that the provided information include, alternatively, a "copy of the local land use permit," subsection (5)(a), a letter from the local planning agency certifying that the project is a permitted use under the local land use laws and does not need further permission, subsection (5)(b), or,

"(5)(c)  A copy of the lessor's covenant in the project's lease agreement that attests to the fact that the proposed

use of the leased premises as a state office facility complies with all applicable federal, state and local statues [*sic*], regulations, ordinances and codes, including the acknowledged comprehensive plan and land use regulations of the city or county in which the leased facility is located; or

"(5)(d)    Other information and documentation provided to the Department equivalent to subsection (5)(a), (b) or (c) of this rule including, but not limited to, written testimony presented to the Department from an authorized representative from the affected city or county."

OAR 125-110-0001.

DAS asserts that it made the appropriate land use compatibility determinations under OAR 125-110-0001 by approving the following findings in the amended lease:

"7.    Clarification of Land Use Compatibility,

"(a)    Recently, Sky Lakes Medical Center, Inc. filed a Petition for Judicial Review under the Oregon Administrative Procedures Act in Klamath County Circuit Court, alleging that the Oregon Department of Administrative Services (**'DAS'**), which acted as the leasing agent for Tenant under the Lease, failed to make certain findings of land use compatibility prior to entering into the Lease, and seeking an order compelling such findings (the **'Lawsuit'**). The Parties believe the Lawsuit is not yet justiciable because such findings did not need to be made prior to entering into the Lease, when the Lease itself provides for them implicitly. In an abundance of caution, however, and to avoid wasting the Court's time and resources on a premature matter, the implicit terms that satisfy any requirement for such findings are hereby made explicit.

"(b)    To the extent any such findings may be required prior to Landlord obtaining a conditional use permit (**'CUP'**), DAS has made the requisite goal compliance and compatibility findings under OAR 125-110-0001 based on information provided by Landlord as per subpart (4). Landlord's initial response to DAS' Request for Information for the Project noted that a CUP would be necessary and the fact that the siting is contingent on a CUP is not at issue. The Parties have understood, agreed and predicated their agreements in the Lease going forward on the fact that a CUP is required to site the Project on the Property. There is no controversy about this fact. Once Landlord obtains

the CUP, it would serve to satisfy any required findings by DAS as per OAR 125-110-0001(5).

"As stated in Section 2.3 of the Lease:

"*Upon the completion of the Project* [(emphasis added)] in accordance with Section 3 below and the Work Letter, Landlord shall lease to Tenant, and Tenant shall lease from Landlord the Property and the Project (together sometimes referred to herein as the **'Premises'**) in accordance with the terms and conditions set forth in this Lease.

"The Project cannot be completed without a CUP; therefore, this final small aspect of the land use process will be in place before Tenant's obligation to lease the Premises under the Lease commences as intended.

"As stated in Section 30.2 of the Lease:

"30.2 Ownership and Condition of Premises. Landlord represents, warrants and covenants, as applicable, that:

"(f) *as of the Rental Commencement Date* [(emphasis added)], the Premises are in compliance with any and all applicable federal, state and local laws and ordinances . . . .

"This covenant by Landlord, made as of the Rental Commencement Date, serves as the covenant described in OAR 125-110-0001(5)(c) for any requirement of findings.

"The Lease as a whole also serves to satisfy OAR 125-110-0001(5)(d) for any requirement of findings. To the extent any such findings may be required prior to Landlord obtaining a CUP, this Section 7 of the Amendment shall serve as DAS' findings."

(Boldface, underscoring, and italics in original.)

On judicial review, Sky Lakes argues that those adopted findings were insufficient to comply with OAR 125-110-0001. Sky Lakes first argues that, read together, subsection (2) and subsection (5)(c) of OAR 125-110-0001 require a present determination that the use allowed by the lease presently complies with local land use laws. Subsection (2) provides that, "[i]n order to approve or undertake a project" under the State Office Facility Leasing Program, DAS "shall find that the project *complies* with the Statewide Planning Goals and *is compatible with* acknowledged city and county

comprehensive plans and *land use regulations.*" (Emphases added.) Sky Lakes argues that the rule requires a compatibility finding prior to approving or undertaking a project. In Sky Lakes's view, the execution of the lease is the relevant approval and undertaking and the required finding must be entered beforehand, and not in the lease itself. Sky Lakes explains that, because the compatibility finding is framed in the present tense ("complies" with the goals; "is compatible" with local land use laws), the lawfulness of the use under the land use laws must be determined based on the legal circumstances existing at the time of the finding. Thus, any land use permit for the project must be obtained before execution of the lease.

Sky Lakes further argues that the requisite showing of present compliance with land use laws is reinforced by the alternative ways that such a showing can be made under subsection (5): production of an issued permit, subsection (5)(a); a letter stating present compliance, subsection (5)(b); and, a covenant in the lease agreement that the proposed use "complies" with land use laws, subsection (5)(c). Sky Lakes notes that DAS has adopted a state agency coordination program, adopted by reference in subsection (2) that reiterates that a lease covenant must "demonstrat[e] *** that the project *has met* all applicable federal, state, and local requirements, including compatibility with the applicable acknowledged comprehensive plan and land use regulations."[4] (Emphasis added.)

DAS responds that its adopted findings do determine "that the project *** is compatible with *** land use regulations" under subsection (2) of the rule. The findings implicitly interpret "compatible" to mean that the proposed use is allowable under the local zoning, either as an outright use or as a use subject to conditions. The findings explain that this finding of compatibility was made in DAS's written acceptance of KFH's response to DAS's request for

---

[4] Sky Lakes's pleadings assert that the findings not only fail to show compatibility with land use regulations, but also fail to show that the "agreement complies with [the] acknowledged comprehensive plan[]." The plan consistency argument was not developed below. We treat the claim, as did the parties, as based on the requirement for finding that the state action is "compatible *** with land use regulations" under ORS 197.180 and OAR 125-110-0001.

information for the project, prior to undertaking the project. That response represented that the use was allowed under the applicable zoning but would require a conditional use permit "to ensure that the proposed development is compatible with the surrounding land uses." Thus, DAS interprets its rule requirement that a leasing project "is compatible with *** land use regulations" to require the finding that DAS actually made in its acceptance of the proposed justification—that the proposed use is allowable under the applicable zoning regulations even if the actual use, commencing at the beginning of the lease, is subject to imposed conditions.

We conclude that DAS's interpretation of "compatible" in its rule is plausible and entitled to deference under the following standard set out in *Don't Waste Oregon Com.*:

> "As noted, this court is authorized to overrule an agency's interpretation of a rule if an agency has 'erroneously interpreted a provision of law.' ORS 183.482(8)(a). In this case, the 'provision of law' is the rule itself. Where, as here, the agency's plausible interpretation of its own rule cannot be shown either to be inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law, there is no basis on which this court can assert that the rule has been interpreted 'erroneously.' It follows that, in circumstances like those presented here, this court cannot overrule, under ORS 183.482(8)(a), an agency's interpretation of its own rule."

320 Or at 142. DAS's interpretation of "compatible" in OAR 125-110-0001 is consistent with the plain meaning of the term, and with the rule's context—ORS 197.180, Land Conservation and Development Commission (LCDC) rules on state agency land use coordination, and other statutes and rules that describe the content of land use compatibility statements.

Again, ORS 197.180(1)(b) requires DAS to "take actions that are authorized by law with respect to programs affecting land use" (including approval of leases) "[i]n a manner compatible with *** land use regulations." We determine the intended meaning of ORS 197.180 by first examining its text and context, in light of any pertinent enactment

history. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009). The ordinary meaning of "compatible" is "capable of existing together without discord or disharmony—used usually with *with*." *Webster's Third New Int'l Dictionary* 463 (unabridged ed 2002). Thus, the requirement that a land use action be "compatible with * * * land use regulations" means that the use "be capable" of existing in compliance with the land use regulations. Here, the intended government use in the amended lease was an allowed use in the applicable zoning district and was capable of complying with those land use regulations through the future issuance of a conditional use permit. Thus, the intended use was "compatible" with local zoning under the plain meaning of that term.

ORS 197.180(13) supplies important context to the intended meaning of "compatible" in ORS 197.180(1). *See Force v. Dept. of Rev.*, 350 Or 179, 188, 252 P3d 306 (2011) ("'[C]ontext' includes, among other things, other parts of the statute at issue."). ORS 197.180(13) provides:

> "State agency rules, plans or programs affecting land use are not compatible with an acknowledged comprehensive plan if the state agency takes or approves an action that is not allowed under the acknowledged comprehensive plan. However, a state agency may apply statutes and rules to deny, condition or further restrict an action of the state agency or of any applicant before the state agency if the state agency applies those statutes and rules to the uses planned for in the acknowledged comprehensive plan."

Under ORS 197.180(13), then, a state agency action is "compatible" with local land use law under ORS 197.180(1) if it is "allowed" by the local zoning code, provided that any determination of compatibility can be conditioned on the application of statutes or other agency rules to "further restrict" the land use. DAS's interpretation of "compatible" in subsection (2) of the rule, allowing a similar conditional restriction through a conditional use permit, is consistent with the meaning of "compatible" as that term is used in ORS 197.180(1) and (13).

LCDC adopted OAR 660-030-0070(3) as part of its rules establishing policies for the review and approval of state agency coordination programs to carry out ORS

197.180. OAR 125-110-0001 implements OAR 660-030-0070 and other LCDC policies that set out the necessary content of an agency rule on land use compatibility. OAR 660-030-0070(3) mimics the requirements of ORS 197.180(13):

> "In carrying out the compatibility requirements of this rule, a state agency is not compatible if it approves or implements a land use program or action that is not allowed under an acknowledged comprehensive plan. However, a state agency may apply statutes and rules which the agency is required by law to apply, to deny, condition or further restrict an action or program, provided it applies those statutes and rules to the uses planned for in the acknowledged comprehensive plan."

In contemplating future conditions, OAR 660-030-0070(3) lends support to DAS's interpretation of OAR 125-110-0001(2), under which "compatible with * * * land use regulations" includes an allowable use under the applicable zoning that may be subject to further restrictions in a conditional use permit.[5]

---

[5] DAS's interpretation of "compatible * * * with land use regulations" in OAR 125-110-0001(2) is also consistent with a related regulatory context—LCDC's requirements for consideration of local land use regulations in the issuance of state permits in OAR chapter 660, division 25. The subject lease and proposal award are not "permits" that are subject to OAR chapter 660, division 25. Those rules, however, show LCDC's understanding of the obligations in ORS 197.180. Under OAR 660-031-0025(2), a showing that a permitted use is compatible can be made in three different ways. That rule requires:

> "Where the affected local government has an Acknowledged Comprehensive Plan, the state agency or local government review shall address compatibility with the Acknowledged Comprehensive Plan when the activity or use is:
>
> "(a)  Prohibited by the plan;
>
> "(b)  Allowed outright by the plan;
>
> "*(c)  Allowed by the plan but subject to standards regarding siting, design, construction and/or operation*; or
>
> "(d)  Allowed by the plan but subject to future goal considerations by the local jurisdiction."

(Emphasis added.) *See also* OAR 660-031-0026(2), allowing compatibility determinations for Class B permits to be shown by proof of compatibility "prior to permit issuance" or by a future required "land use approval from the affected local government"; OAR 660-031-0030 (allowing for permit approval conditioned on land use action by local government). Thus, DAS's interpretation of OAR 125-110-0001(2) to allow a showing of compatibility for a lease project by proof that the lease use is allowed by land use regulations but subject to siting standards in a conditional use permit is consistent with those contextually-related rules.

We also note that DAS's interpretation of OAR 125-110-0001(2) is consistent with how a land use compatibility statement, a communication of land use compatibility by a local planning authority that is given to a state agency as part of the agency's compliance with ORS 197.180, is defined by ORS 197.015(10)(b)(H). That provision specifies that a "land use decision," that otherwise is subject to the requirements of ORS chapter 197 "does not include" a statement

"(H)   That a proposed state agency action subject to ORS 197.180 (1) is compatible with the acknowledged comprehensive plan and land use regulations implementing the plan, if:

"(i)   The local government has already made a land use decision authorizing a use or activity that encompasses the proposed state agency action;

"(ii)   The use or activity that would be authorized, funded or undertaken by the proposed state agency action is allowed without review under the acknowledged comprehensive plan and land use regulations implementing the plan; or

"(iii)   The use or activity that would be authorized, funded or undertaken by the proposed state agency action requires a future land use review under the acknowledged comprehensive plan and land use regulations implementing the plan[.]"

ORS 197.015(10)(b)(H)(iii) equates, then, for purposes of the land use statutes, a determination that a "proposed state agency action * * * is compatible with * * * land use regulations" with a statement that the "use or activity * * * requires a future land use review under the * * * land use regulations * * *." That understanding of a land use compatibility determination—that the use is allowed but subject to a future review process—is the same as the one announced by DAS in its findings on OAR 125-110-0001(2), and the statute provides some additional regulatory context to the meaning of "compatibility" under ORS 197.180 in land use compatibility statements, such as those contemplated in the rule.[6]

_____

[6] ORS 197.015(10)(b)(H) was adopted several years after ORS 197.180. It offers no insight into the meaning of "compatible" in ORS 197.180 that was

We emphasize that state agencies can implement ORS 197.180(1) in a number of ways. We only conclude that DAS's application of ORS 197.180 and interpretation of "compatible" in OAR 125-110-0001 is consistent with the plain meaning of the word and with how compatibility determinations are made in related contexts. Thus, as permitted by ORS 197.180(13) and OAR 660-030-0070(3), some agencies allow a showing of compatibility by proof that the use is allowed or by conditioning the permit upon the obtaining of a land use approval. *See, e.g.*, OAR 690-005-0035(4) (water use approvals require land use compatibility by showing that the use is allowed outright, necessary land use approvals have been obtained, or by conditioning approval of permit on the obtaining of the necessary land use approvals); OAR 635-040-0009(4)(d) (requiring applicant for salmon hatchery permit to document land use compatibility by showing that a specific land use approval has been obtained, that no approval is needed, or by a declaration acknowledging that the permit will not be issued until the land use approval is obtained or determined to not be needed). The practice of those agencies is consistent with the way that DAS interprets and applies OAR 125-110-0001(2). In contrast, some other agencies require present compliance or permission before authorizing an action. *See, e.g.*, OAR 333-061-0062 (5)(a), (land use compatibility statement for certain Oregon Health Authority actions must include a "copy of the local land use permit (for example, conditional use permit, subdivision approval, or zoning clearance) demonstrating that the plan or project has received land use approval from the jurisdiction"). In all cases, however, land use regulatory compliance must exist at the time the permit is operative.

Thus, DAS's interpretation of the requirement in OAR 125-110-0001(2) that a leasing project "[be] compatible with *** land use regulations" is satisfied by a finding that the proposed use is an allowed use under the applicable

---

intended by the legislature. We suggest only that the later-enacted statute can be of aid in interpreting the earlier one for the purpose of demonstrating the legislature's consistent practice in regulating state agency coordination practices. *Halperin v. Pitts*, 352 Or 482, 490, 287 P3d 1069 (2012) (later-enacted statute reference "for the purpose of demonstrating consistency (or inconsistency) in word usage over time as indirect evidence of what the enacting legislature most likely intended").

zoning regulations even if the actual use is subject to the future application of siting standards through conditional use review, is plausible and entitled to judicial deference under *Don't Waste Oregon Com*. That is because that interpretation is consistent with the plain meaning of "compatible," and with the legal context of the rule. That meaning of "compatible," in turn, supports DAS's interpretation and application of subsection (5) of the rule in its approval findings.

As noted, subsection (2) specifies that the compatibility determination can be made by finding that the appropriate documentation has been provided under subsection (5):

> "To make its goal compliance and plan compatibility findings, the Department shall comply with sections (2) - (6) of this rule and shall also adhere to the procedures in the Department's state agency coordination program which is hereby adopted by reference."

As noted, subsection (5) allows documentation of land use compatibility by alternative means: a copy of a permit (subsection (5)(a)), a land use compatibility letter (subsection (5)(b)), a lessor covenant (subsection (5)(c)), or, under subsection (5)(d), "[o]ther information and documentation provided to the Department equivalent to subsections (5)(a), (b), or (c) of this rule."

DAS made findings that the "project" at issue was the construction and leasing of the premises for the intended use and that the project is "allowed and undertaken" when the lease commences. DAS alternatively concluded that the project was undertaken when the proposal award was made and that findings were made in DAS's acceptance of KFH's information on land use compatibility. The adopted findings set out that a conditional use permit must be obtained before completion of the project ("The Project cannot be completed without a CUP.") and that such a requirement complies with the requirements of OAR 125-110-0001(5)(a). The findings provide that the covenant to obtain that permit "as of the Rental Commencement Date" so that the "Premises are in compliance with" local land use laws "serves as the covenant described in OAR 125-110-0001(5)(c)" and that, alternatively,

the findings of compliance as of the functional commencement of the lease are the "equivalent" of any requirement of any more immediate compliance as allowed by subsection (5)(d).

The first question, then, is whether DAS's interpretation of subsection (5)(a) was plausible and entitled to deference under *Don't Waste Oregon Com*. We conclude that DAS properly interpreted the requirement of a finding "that the project *** is compatible with *** land use regulations" under subsection (2) to include proof that the leased use is an allowed use under the applicable zoning regulations even if the actual use is subject to a conditional use permit before the lease commences. Accordingly, DAS's interpretation of subsection (5)(a) to allow the provision of a conditional use permit prior to occupancy as sufficient documentation of compatibility was plausible and consistent with the text of subsection (5)(a) in the context of subsection (2).

The second question is whether DAS's interpretation of subsection (5)(c) that a "covenant *** that attests to the fact that the proposed use of the leased premises *** complies *** with land use regulations" includes the covenant actually given is plausible, and not inconsistent with the wording of the rule itself, or with the rule's context, or with any other source of law. We conclude that DAS's interpretation of OAR subsection (5)(c) meets that standard of review and provides an alternative justification for compliance with subsection (5).

As noted, as part of the process of obtaining "approval of a project under the State Office Facility Leasing Program," subsection (5)(c) requires that the project's compatibility with land use laws be documented in various ways, including by:

"(c)  A copy of the lessor's covenant in the project's lease agreement that attests to the fact that the proposed use of the leased premises as a state office facility complies with all applicable federal, state and local statues [*sic*], regulations, ordinances and codes, including the acknowledged comprehensive plan and land use regulations of the city or county in which the leased facility is located[.]"

Sky Lakes argues that a "covenant" of land use compatibility by a lessor under subsection (5)(c) means only

a representation of the legal status of the property ("attests to the fact") as of the time of the representation. DAS concluded that, in the context of a build-to-suit lease, a "covenant" of lawful use has a broader meaning than just a certification or representation about past conduct or status. It also includes a promise about future performance by the covenanting party, including an attestation of a future status.

That interpretation is consistent with the legal meaning of "covenant." We give a legal term "its established legal meaning." *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015). As defined in *Black's*, "covenant," as a verb, means "[t]o promise or undertake in a covenant; to agree formally." *Black's Law Dictionary* 460 (11th ed 2019). Analogously, the noun "covenant" means, "[a] formal agreement or promise, usu. in a contract or deed, to do or not do a particular act; a compact or stipulation." *Id*. Viewed in that manner, a lessor's "covenant" under subsection (5)(c) can be forward-looking, a "promise *** to *** do a particular act, *** a stipulation," specifically a promise or attestation that when the property is used as proposed, the use will be lawful. That is how DAS interpreted the meaning of "covenant." That interpretation is consistent with the legal meaning of the term.

A promise that land use compatibility will exist at the time of the actual use will work differently in a lease and a build-to-suit lease. In an ordinary lease under OAR 125-100-0001(5), a stipulation or promise about land use compatibility would be contemporaneous to the date of the execution of the lease and the immediate occupancy and use of the premises. That is the time when the use must be compatible with land use regulations. In this case, however, the lease was a build-to-suit lease, a combination of a development agreement and a lease of the developed property. The lease term—and land use—commenced after construction of the building. For a build-to-suit lease, the covenant compliance date could also be pegged to the beginning of the lease term, just as it would be for an ordinary lease, even when the lease began well after its date of execution. Thus, DAS's construction of subsection (5)(c) to allow the tying of the covenant of compatibility to the beginning of the lease term—whether in a simple lease or a build-to-suit one—is

plausible and consistent with the text of subsection(5)(c) in the context of subsection (2). The circuit court did not err in deferring to DAS's interpretation of the rule.[7]

In sum, the circuit court did not err in upholding DAS's interpretation of OAR 125-110-0001. DAS determined that the rule's requirement of compatibility with land use regulations was satisfied by proof that the leased use is allowable under land use regulations and a promise or stipulation to obtain a conditional use permit for the actual use before occupancy.[8] That interpretation of the rule is plausible and consistent with the meaning of "compatible" and "covenant" and the legal and factual context of the rule's application.

Sky Lakes next contends that the circuit court erred in denying its motion for leave to file a second amended petition. The court determined that the motion for leave to file a second amended petition was "moot" because "the legal analysis and conclusions would be the same as for the [f]irst [a]mended [p]etition" and the court had allowed DAS's motion for summary judgment as to those claims. We agree with Sky Lakes that the court erred in concluding that no analytically different claims were raised in the second amended petition and in denying the motion on the basis of mootness.

In fact, DAS correctly argued below that the claims *were* analytically different, and that Sky Lakes sought review over a different order in the second amended petition. DAS asserted that the review over that new claim did not relate back to the review of a different order in the amended petition under ORCP 23 C and was untimely. DAS renews that contention on review. Because there are no disputed factual issues that require resolution before we can answer that legal question, we can address it, and, upon doing so, we

---

[7] Our disposition that documentation of conditional compatibility was sufficient under DAS's plausible interpretation of subsections (5)(a) and (c) obviates the need to determine under subsection (5)(d) whether that same proof is "equivalent" to a different meaning of those subsections.

[8] The covenant to obtain a conditional use permit was satisfied. In *Sky Lakes Medical Center, Inc. v. Klamath Falls*, 299 Or App 343, 450 P3d 582 (2019), we affirmed LUBA's order affirming the Klamath Falls City Council's approval of KFH's application for a conditional use permit.

conclude that the new review claim in the second amended petition was untimely. *See State v. Lovaina-Burmudez*, 257 Or App 1, 14, 303 P3d 988 (2013) ("[W]ith respect to alternative grounds for affirmance raised before, but not resolved by, the trial court, [we] will ordinarily remand to the trial court to determine potentially dispositive questions of fact in the first instance.").

As noted, the amended petition sought review over DAS's findings in the amended lease, contending that DAS "failed to make required *** compatibility findings" and demanding relief under ORS 183.484. The order under review was DAS's approval of the amended lease, including the challenged findings.[9]

The proposed second amended petition, attached to the April 10, 2019, motion for leave to file the same, sought review over the February 23, 2018, notice of award. The notice of award announced the selection of the KFH proposal over four other proposals and was directed, by its terms, to "all of the proposers and stakeholders" in the selection process. That notice of award was an agency "order," as defined under ORS 183.310(6)(a) ("any agency action expressed orally or in writing directed to a named person or named persons"). The award of the proposal was an agency action that was directed to the proposers who responded to the agency's requests for proposals. It was the "final order" of the agency as defined by ORS 183.610(6)(b) ("final agency action expressed in writing") because the notice of award was the last writing of DAS that was directed to those proposers. The second amended petition sought review over that final order, the selection of the KFH "proposal over alternative proposals."

Sky Lakes pleaded that the "stated grounds" in the notice of award "relied on errors in the leasing process,"

_____

[9] In its pleadings and briefs, Sky Lakes contends that it also challenged the execution of the lease by DHS. We need not decide whether the execution of a contract is an "order" subject to review under ORS 183.484, much less whether that action by DHS is subject to ORS 197.180. *See* ORS 183.310(6)(a) (defining "order" as "any agency action expressed orally or in writing directed to a named person or named persons"). To whatever extent the amended lease execution by DHS is reviewable and subject to ORS 197.180, the resolution of that claim is subject to the same analysis as the disposition of the claims against DAS.

including improper rental rate negotiations, improper determination of the number of parking spaces, reliance on "inapplicable legal standards," bias and consideration of extraneous factors, and failure to fully consider the Sky Lakes proposal. The second amended petition sought reversal and remand of the notice of award, contending:

> "Respondents' grounds for selecting the [KFH] proposal over alternative proposals, including each of the grounds stated in the Notice of Award, were legally erroneous, constituted an abuse of discretion, or were not supported by substantial evidence in the record."

Sky Lakes pleaded that it was adversely affected and aggrieved by that agency order because it has a financial interest in a competing proposal "that was rejected in favor of the [KFH site]." Thus, the second amended petition sought review over an agency order—the notice of award—that was different from the order under review in the amended petition, the approval of the lease.[10]

Under the Administrative Procedures Act, Sky Lakes was obligated to file any petition for review of the notice of award order "within 60 days only following the date the order is served," ORS 183.484(2), which would have been approximately April 24, 2018. Sky Lakes did not file any petition for review until August 23, 2018. That petition possibly sought review over the March 27, 2018, lease between KFH and DHS in seeking relief under ORS 183.484 and ORS 183.490.

Sky Lakes filed an amended petition on November 23, 2018, seeking review over the October 4 lease amendment and findings. Sky Lakes alleged:

> "DAS failed to make required land use compliance and compatibility findings before entering the lease and buildout

---

[10] Sky Lakes attempts to conflate both orders into one order in the second amended petition. It pleads that the procurement errors were part of the "leasing process" and that, "[d]espite these errors in the leasing process, Respondents nevertheless approved and entered [into] the lease and buildout agreement with [KFH]." There is little question, however, that the notice of award is a final agency order on the procurement of the lease. As noted, the second amended petition claims error in the issuance of that order and derives standing for that claim based on the rejection of its own proposal.

agreement and the amendment to that agreement does not, and could not, make the necessary findings."

Sky Lakes sought to set aside the lease and buildout agreement.

Sky Lakes argues that the November 23, 2018, amended petition was within 60 days of the October 4 lease amendment and findings and a timely review over the entire lease as amended. It seeks to relate back the April 10, 2019, second amended petition to the timely November 23, 2018, amended petition under ORCP 23 C. That rule provides:

> "**C Relation Back of amendments.**  Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

(Boldface in original.)

ORCP 23 C does not allow the relation back of the review of the notice of award to the review of the findings for the amended lease. Sky Lakes's claim in the first amended petition was that the DAS order approving the lease was insufficiently justified in findings adopted under ORS 197.180 and OAR 125-110-0001. The "conduct, transaction, or occurrence" in the first amended petition was the order approving the lease amendment as of October 4, 2018. The claim in the second amended petition arose from a different "conduct, transaction, or occurrence," that being the February 23, 2018, notice of award. Therefore, the time of the challenge to the notice of award did not relate back to the time of the challenge to the lease findings under ORCP 23 C. The second amended petition, dated April 10, 2019, was filed more than a year after the order issuing the notice of award—well after the 60 days allowed by statute. It was time-barred under ORS 183.484(2). Accordingly, the circuit court did not err in denying the motion for leave to file the second amended petition.

Affirmed.