No. 590          August 28, 2024          509

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

FORT KLAMATH CRITICIAL HABITAT
LANDOWNERS, INC.;
NBCC, LLC; Agri Water, LLC; Roger Nicholson;
Goose Nest Ranches, LLC; Randall Kizer;
Gerald H. Hawkins; Harlowe Ranch, LLC; and
E. Martin Kerns,
*Petitioners-Appellants,*

*v.*

Doug WOODCOCK,
in his official capacity as the Oregon Water Resources
Department Director;
Tom Skiles, in his official capacity as District No. 17
Watermaster; Oregon Water Resources Department; and
Lisa J. Jaramillo, in her official capacity as Transfer and
Conservation Section Manager, for Thomas Byler, Director,
Oregon Water Resources Department,
*Defendants-Respondents,*

*and*

THOMAS FAMILY LIMITED PARTNERSHP,
*Intervenor-Respondent.*

Marion County Circuit Court
21CV37688; A181385

Audrey J. Broyles, Judge.

Argued and submitted July 3, 2024.

Dominic M. Carollo argued the cause for appellants. Also on the briefs were Nolan G. Smith and Carollo Law Group.

Inge D. Wells, Assistant Attorney General, argued the cause for respondents. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Brad Mullen, Certified Law Student.

Merissa A. Moeller argued the cause for intervenor-respondent. Also on the brief were Kirk B. Maag and Stoel Rives LLP.

Before Egan, Presiding Judge, Kamins, Judge, and Walters, Senior Judge.

EGAN, P. J.

Affirmed.

**EGAN, P. J.**

Petitioners, the Fort Klamath Critical Habitat Landowners, *et al.*, challenge an order of the Oregon Water Resources Department (OWRD) in other than a contested case, which the Marion County Circuit Court affirmed on judicial review, approving a temporary transfer of water rights by intervenor, the Thomas Family Limited Partnership. The issues on appeal are legal, and we review the circuit court's judgment for legal error. *See* ORS 183.484(5)(a). For the reasons explained in this opinion, we conclude that the circuit court did not err in affirming the OWRD's order, and we therefore affirm.

Intervenor owns "determined" in-stream water rights, with priority dates of 1864,[1] in tributaries of the Klamath River, in south-central Oregon, within the Upper Klamath Basin.[2] The water rights, identified as Claim KA-67, authorize intervenor to divert water from points of diversion on the Wood River (a tributary of the Klamath River) and Crooked Creek (a tributary of the Wood River) and to use that water for "irrigation * * * with incidental livestock watering," at a "place of use" on intervenor's ranch in the Upper Klamath Basin, on the northeast side of Agency Lake, north of Upper Klamath Lake.

Petitioners also have in-stream irrigation water rights in the Wood River and Crooked Creek, upstream (to the north) of intervenor's water rights. Petitioners' water rights have priority dates that are either the same as or junior to (more recent than) intervenor's water rights.

The Klamath Tribes have in-stream water rights in the Wood River and Crooked Creek, which are upstream of and senior to all water rights, with a priority date of "time

---

[1] Surface water rights predating the Water Code of 1909 are "determined" by an adjudication process set forth in ORS Chapter 539. As part of the Klamath River Basin General Stream Adjudication, intervenor's water rights were determined in 2014 to be a "Klamath Termination Act claim."

[2] The Klamath Basin is a major river basin located in south-central Oregon and northwestern California. It includes the entire drainage area of the Klamath River and its tributaries. The Klamath Basin begins in Oregon at headwaters near Crater Lake, crosses into California, and ultimately drains into the Pacific Ocean. Scientists and water resource managers frequently distinguish between the "Upper Klamath Basin," which is located mostly in Oregon but includes some land in California, and the "Lower Klamath Basin," which is located almost entirely in California.

immemorial." The Klamath Tribes, through the United States Bureau of Indian Affairs (BIA), send a "call for water" at the beginning of each irrigation season, and the OWRD then sends regulation notices to holders of water rights as soon as water levels fall below the Tribes' claims. The water rights of water-right holders are curtailed when the flow of the Wood River or Crooked Creek is below the amount of water necessary to fill the call by the BIA and the Tribes. Thus, water uses which reduce the flow of the Wood River and Crooked Creek below the level of the tribal calls result in a curtailment of the rights of all other water-right holders in the streams.

Intervenor filed an application, identified as Temporary Transfer Application T-13673, to transfer its water rights under Claim KA-67 downstream, to a new point of diversion some 44 miles to the south, in Oregon, on the Klamath River.[3] The transferred water would then be used for irrigation of wetland plants in a portion of the Lower Klamath National Wildlife Refuge, to help maintain habitat for fish and wildlife. The refuge is within the hydrological drainage area of the Upper Klamath Basin, partly in Oregon but mostly in California. The OWRD approved Temporary Transfer Application T-13673 by an order in other than a contested case, and, on cross-motions for summary judgment, the circuit court upheld the order. Petitioners challenge the circuit court's rulings.

We describe briefly the statutory context for the issues raised by the parties on appeal, which primarily concern the statutory construction of ORS 540.520 and ORS 540.523. ORS 540.520 states the requirements for a permanent transfer of water rights:

"(1)(a)  *Except * * * when an application for a temporary transfer is made under ORS 540.523*, if the holder of a water use subject to transfer for irrigation, domestic use, manufacturing purposes, or other use, for any reason desires to change the place of use, the point of diversion, or the use made of the water, an application to make such change, as the case may be, shall be filed with the Water Resources Department."

---

[3] It is undisputed that intervenor's water use is subject to transfer. ORS 540.505(4)(a) (A "water use subject to transfer" includes a water use established by an "adjudication under ORS Chapter 539 as evidenced by court decree.").

(Emphasis added.) We note that ORS 540.520(1) explicitly excludes from its coverage an application for a temporary transfer under ORS 540.523.[4]

---

[4] ORS 540.520 then sets forth the requirements for an application for a water use transfer under ORS 540.520. ORS 540.520(2) to (8) provide:

"(2) The application required under subsection (1) of this section shall include:

"(a) The name of the owner;

"(b) The previous use of the water;

"(c) A description of the premises upon which the water is used;

"(d) A description of the premises upon which it is proposed to use the water;

"(e) The use that is proposed to be made of the water;

"(f) The reasons for making the proposed change; and

"(g) Evidence that the water has been used over the past five years according to the terms and conditions of the owner's water right certificate or that the water right is not subject to forfeiture under ORS 540.610.

"(3) If the application required under subsection (1) of this section is necessary to allow a change in a water right pursuant to ORS 537.348, is necessary to complete a project funded under ORS 541.932, or is approved by the State Department of Fish and Wildlife as a change that will result in a net benefit to fish and wildlife habitat, the department, at the discretion of the Water Resources Director, may waive or assist the applicant in satisfying the requirements of subsection (2)(c) and (d) of this section. The assistance provided by the department may include, but need not be limited to, development of an application map.

"(4) If the application is to change the point of diversion, the transfer shall include a condition that the holder of the water right provide a proper fish screen at the new point of diversion, if requested by the State Department of Fish and Wildlife.

"(5) Upon the filing of the application the department shall give notice by publication in a newspaper having general circulation in the area in which the water rights are located, for a period of at least two weeks and not less than one publication each week. The notice shall include the date on which the last notice by publication will occur. The cost of the publication shall be paid by the applicant in advance to the department. In applications for only a change in place of use or for a change in the point of diversion of less than one-fourth mile, and where there are no intervening diversions between the old diversion of the applicant and the proposed new diversion, no newspaper notice need be published. The department shall include notice of such applications in the weekly notice published by the department.

"(6) Within 30 days after the last publication of a newspaper notice of the proposed transfer or the mailing of the department's weekly notice, whichever is later, any person may file, jointly or severally, with the department, a protest against approval of the application.

"(7) If a timely protest is filed, or in the opinion of the Water Resources Director a hearing is necessary to determine whether the proposed changes as described by the application would result in injury to existing water rights, the department shall hold a hearing on the matter. Notice and conduct of the

ORS 540.523 then establishes an expedited process for a *temporary* transfer of a point of diversion and place of use of water:

"(1)   In accordance with the provisions of this section, any person who holds a water use subject to transfer may request that the Water Resources Department approve the temporary transfer of place of use and, if necessary to convey water to the new temporary place of use, temporarily change the point of diversion or point of appropriation for a period not to exceed five years. An application for a temporary transfer shall:

"(a)   Be submitted in writing to the Water Resources Department;

"(b)   Be accompanied by the appropriate fee for a change in the place of use as set forth in ORS 536.050;

"(c)   *Include the information required under ORS 540.520(2);* and

"(d) Include any other information the Water Resources Commission by rule may require.

"(2) Notwithstanding the notice and waiting requirements under ORS 540.520 [relating to permanent transfers of water rights], *the department shall approve by order a request for a temporary transfer under this section if the department determines that the temporary transfer will not injure any existing water right.*"

(Emphases added.) Intervenor's application for a temporary transfer was subject to the provisions of ORS 540.523.[5]

---

hearing shall be under the provisions of ORS chapter 183, pertaining to contested cases, and shall be held in the area where the rights are located unless all parties and persons who filed a protest under this subsection stipulate otherwise.

"(8) An application for a change of use under this section is not required if the beneficial use authorized by the water use subject to transfer is irrigation and the owner of the water right uses the water for incidental agricultural, stock watering and other uses related to irrigation use, so long as there is no increase in the rate, duty, total acreage benefited or season of use."

[5] Intervenor's transfer application on its determined claim was subject to ORS 540.523 by way of a note to ORS 539.170, which provides that, pending judicial review of the Klamath Basin Adjudication, a determined claim is a "primary water right that is subject to temporary transfer for purposes of ORS 540.523." Or Laws 2015, ch 445, § 1(2)(b).

A temporary transfer may not be approved if the department determines that the transfer will "injure any existing water right." Additionally, approvals are subject to revocation "if the department finds that the transfer is causing injury to any existing water right." ORS 540.523(5) ("The department may revoke a prior approval of the temporary transfer at any time if the department finds that the transfer is causing injury to any existing water right.").

ORS 540.523 cross-references ORS 540.520 in two paragraphs. ORS 540.523(1)(c) states that an application for a temporary transfer must include the information required by ORS 540.520(2). ORS 540.520(2) provides, in turn:

> "The application required under subsection (1) of this section shall include:
>
> "(a)   The name of the owner;
>
> "(b)   The previous use of the water;
>
> "(c)   A description of the premises upon which the water is used;
>
> "(d)   A description of the premises upon which it is proposed to use the water;
>
> "(e)   The use that is proposed to be made of the water;
>
> "(f) The reasons for making the proposed change; and
>
> "(g) Evidence that the water has been used over the past five years according to the terms and conditions of the owner's water right certificate or that the water right is not subject to forfeiture under ORS 540.610."

And ORS 540.523(2) states that, "notwithstanding the notice and waiting requirements under ORS 540.520," an application for a temporary transfer *shall* be approved "if the department determines that the temporary transfer will not injure any existing water right." (Emphasis added.)

In support of their challenge to the OWRD's order, petitioners also rely on a different set of statutory provisions, those applicable to "out-of-basin" transfers of water. When the owner of a water right seeks to make an out-of-basin transfer of a water right, the transfer is subject to

ORS 537.801 to 537.809. Petitioners' primary challenge to the OWRD's order is that Temporary Transfer Application T-13673 seeks an out-of-basin transfer of Claim KA-67 without compliance with the out-of-basin transfer requirements set forth in ORS 537.801 to 537.809.[6] In their comments to the OWRD regarding Temporary Transfer Application T-13673, petitioners argued that the transfer of intervenor's water rights was an unlawful out-of-basin diversion that would cause petitioners injury, would change Claim KA-67's character of use, and would be futile and wasteful.

The OWRD determined that temporary transfers of water rights simply are not subject to the out-of-basin transfer statutes. It rejected petitioners' contention that Temporary Transfer Application T-13673 requested a transfer that was subject to the requirements for an out-of-basin transfer, and also rejected petitioners' claim of injury, finding:

"The proposed changes would not result in injury to other water rights. This finding is made through an abbreviated review recognizing that the transfer may be revoked under ORS 540.523(5) if the Department later finds that the transfer is causing injury to any existing water right."

The OWRD approved intervenor's temporary transfer of Claim KA-67, concluding:

"[T]emporary changes in place of use and points of diversion to convey water to the temporary place of use proposed in Temporary Transfer Application T-13673 are

---

[6] ORS 537.801 defines the terms that bear on petitioners' contention and provides:

"(1) As used in ORS chapters 537 and 540:

"(a) 'Basin' means one of the river basins within this state, as defined by Water Resources Department Map No. 0.2, dated 1987, and entitled 'Oregon Drainage Basins,' unless the context requires otherwise.

"(b) 'Basin of origin' means the basin in which surface or ground water that is the subject of an application under ORS 537.211, 537.400, 537.620, 540.520, 543.210 or 543.290 is located.

"(2) The Legislative Assembly finds that the transport of significant quantities of water outside the boundaries of the basin of origin may have a significant impact on the water and other resources of the basin of origin.

"(3) Therefore, the Legislative Assembly declares that the waters of the state may not be appropriated, stored or diverted for use outside the basin of origin except in compliance with the provisions of ORS 537.801 to 537.860, including, if applicable, the prior approval of the Legislative Assembly under ORS 537.810."

consistent with the requirements of ORS 540.523 and OAR 690-380-8000."

The OWRD's approval continued the use of Claim KA-67 for irrigation:

> "The use of water at the temporary place of use authorized by this transfer shall be in accordance with the terms and conditions of Claim KA-67."

Petitioners filed a petition for judicial review of the OWRD order in the Marion County Circuit Court pursuant to ORS 183.484(1). In their third amended petition, petitioners alleged five "claims" challenging the legality the OWRD's approval of the temporary transfer of intervenor's water rights.[7] Petitioners sought a declaration that the OWRD's final order "is defective or unlawful, will result in injury to Petitioners, is outside the jurisdiction delegated to the agency by law, is otherwise in violation of a statutory or constitutional provision, and is not supported by substantial evidence."

Petitioners' arguments in the circuit court focused on their contention that the practical effect of the transfer will be less water available to petitioners for irrigation. Petitioners presented evidence that, in its original place of diversion and use, Claim KA-67 does not result in a full "consumptive use" of intervenor's paper water right. That is because a portion of the water used by intervenor returns to the streams as "return flow."[8] Additionally, petitioners

---

[7] In their first claim, petitioners alleged that their water rights are "threatened to be injured" by the temporary transfer, and that the OWRD therefore acted outside the range of its discretion in approving the transfer application. In their second claim, petitioners alleged that the OWRD lacked authority to approve the transfer. In their third claim, petitioners alleged that the OWRD acted outside the range of its discretion in approving the transfer in failing to apply the requirements for an out-of-basin diversion. They alleged, further, that the transfer improperly approved a change in the character of use by shifting the use from irrigation to the nonagricultural purpose of support of wildlife. In their fourth claim, petitioners alleged that OWRD's order is not supported by substantial evidence, because the agency neglected to respond to comments by petitioners regarding the likelihood of potential injury to petitioners' water rights. In their fifth claim, petitioners alleged that the transferred water will be lost to evaporation, resulting in waste.

[8] OAR 690-012-0020(11) defines "return flow" as "water that returns to a stream either uncontrolled or by controlled conveyance following its diversion and use from a surface or groundwater source."

presented evidence that intervenors have not always been able to use their full paper right, because in-stream flow diversions have been restricted as a result of priority calls by the BIA and the Tribes. Thus, petitioners contended, the reduction in flows of the Wood River and Crooked Creek at the original place of use of Claim KA-67 is generally less than the total use authorized by intervenor's paper water right. Petitioners contended that a transfer of intervenor's full paper right downstream will result in greater use of their full paper right and a larger reduction in flow than currently occurs, thereby injuring petitioners' water rights.

The circuit court's review of OWRD's order is under ORS 183.484,[9] based on the record developed before the OWRD and in the circuit court. *Norden v. Water Resources Dept.*, 329 Or 641, 649, 996 P2d 958 (2000). Under ORS 183.484, the circuit court reviews the record for substantial evidence to determine "whether the evidence would permit a reasonable person to make the determination that the agency made in a particular case." *Id.*

Just as in other civil cases, summary judgment is available when the circuit court reviews an order in other than a contested case under ORS 183.484, if there are no genuine issues of material fact going to the merits of the challenged agency decision and the moving party is entitled

[9] ORS 183.484(5) provides:

"(a) The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A) Set aside or modify the order; or

"(B) Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b) The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A) Outside the range of discretion delegated to the agency by law;

"(B) Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C) Otherwise in violation of a constitutional or statutory provision.

"(c) The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding."

to judgment as a matter of law. *See Bridgeview Vineyards, Inc. v. State Land Board*, 258 Or App 351, 367, 309 P3d 1103 (2013); ORCP 47 C. Petitioners filed a motion for partial summary judgment, asserting that the transfer application was seeking an "out of basin" transfer, and that the OWRD had not considered all the criteria that apply in that context. Intervenor and the OWRD filed a motion for summary judgment on all of petitioners' claims. The circuit court denied petitioners' motion for partial summary judgment and granted intervenor's and the OWRD's motions, dismissing petitioners' claims and upholding the OWRD's order.

On appeal, petitioners raise five assignments of error, challenging both the circuit court's denial of petitioners' motion for partial summary judgment and the circuit court's granting of intervenor's and the OWRD's motions for summary judgment. We review the circuit court's rulings on cross-motions for summary judgment for errors of law, determining whether the summary judgment record shows that there are no genuine issues of material fact and that either party was entitled to judgment as a matter of law. *Windmill Inns of America, Inc. v. Cauvin*, 299 Or App 567, 568, 450 P3d 1013 (2019), *rev den*, 366 Or 257 (2020). Under that standard, we address each of petitioners' assignments of error.

Petitioners' argument in their first assignment of error is somewhat circuitous. Petitioners do not dispute that the transfer of Claim KA-67 is a temporary transfer under ORS 540.523. They contend, however, that the transfer is subject to the provisions relating to out-of-basin transfers, ORS 537.801 to 537.809, which the OWRD failed to consider, and which would bar the transfer. Their contention is based on two arguments: (1) The out-of-basin transfer provisions, ORS 537.801 to 537.809, state explicitly that they apply to transfers made "under ORS 540.520," and, although Temporary Transfer Application T-13673 seeks a temporary transfer under ORS 540.523, it also is a transfer under ORS 540.520. (2) Temporary Transfer Application T-13673 would result in an out-of-basin transfer, because it seeks to transfer the use of water outside of the State of Oregon. If, according to petitioners, the out-of-basin provisions are

applicable, they require additional considerations that were not addressed by the OWRD and that cannot be satisfied.[10]

Intervenor and the OWRD respond, simply, that the provisions of ORS 537.801 to ORS 537.809 relating to out-of-basin transfers do not apply to temporary transfers, and that intervenor's application is an application for a temporary transfer. They contend further, that intervenor's application simply does not seek an out-of-basin transfer.

The parties' contentions raise questions of statutory construction that we address under the analytical template articulated in *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009), by first examining the statutes' text in context, considering any relevant legislative history, and proceeding, if necessary, to general maxims of statutory construction. As we discuss below, that examination leads us to conclude that Temporary Transfer Application T-13673 does not request an out-of-basin transfer.

Petitioners' primary textual argument under their first assignment of error is that, because ORS 540.523(1) cross-references ORS 540.520(2) for what must be included in an application under ORS 540.523, an application for a temporary transfer is a transfer under ORS 540.520, and, that, as a transfer under ORS 540.520, it is subject to the out-of-basin transfer provisions by way of ORS 537.801(1) (b), which, for purposes of the out-of-basin provisions, defines a "basin of origin" as "the basin in which surface or ground water that is the subject of an application under ORS 537.211, 537.400, 537.620, 540.520, 543.210 or 543.290 is located." Intervenor and the OWRD respond that a cross-reference in ORS 540.523(1) to ORS 540.520(2), for the limited purpose of what is to be included in an application for a temporary transfer, does not convert the application for a temporary transfer into an application under ORS 540.520. They argue that that conclusion is reinforced by the fact that ORS 540.520(1) explicitly states that it does not apply to applications under ORS 540.523. Additionally, ORS

---

[10] Those requirements include: (1) an analysis of water availability, water needs, return flows, water quality, and more in the basin of origin; (2) a public hearing on the application; and (3) a reservation of water in the basin of origin sufficient to protect public uses. ORS 537.803; ORS 537.805; ORS 537.809.

540.523(2) states that an application under ORS 540.523 for a temporary transfer *must* be approved "[n]otwithstanding the notice and waiting requirements under ORS 540.520," if the department determines that the temporary transfer will not injure any existing water right. We need not resolve this particular dispute of statutory construction because, as we will explain, we agree with intervenor and the OWRD that intervenor's application is not an application for an out-of-basin transfer.

Petitioners' second contention is that Temporary Transfer Application T-13673 results in an out-of-basin transfer, because the water will be used outside of the State of Oregon. For that contention, petitioners seek support in ORS 537.801(1)(a), which defines a "basin" as "one of the river basins *within this state*[.]" (Emphasis added.) Based on that definition, petitioners contend that a "basin," for purposes of out-of-basin transfers, has its geographic borders within the state; thus, in petitioners' view, any transfer of the use of water outside of the State of Oregon is an out-of-basin transfer, whether or not it is temporary or within the hydrological basin.

Intervenors and the OWRD respond that there is no statutory or other authority for petitioners' position that a basin must have its boundaries within the State of Oregon, and we agree. We do not understand the statutory definition of "basin" in ORS 537.801(1), to require that the basin must be within the state's boundaries. A basin can be geographically "within the state," as ORS 547.801(1) defines it, and also extend hydrologically into another state. It is undisputed that the Upper Klamath Basin is a hydrological basin within both Oregon and California. The transferred point of diversion of Claim KA-67 and the transferred place of use of Claim KA-67 are both within that basin.

We do not think that there is any ambiguity in the statutes on this point. Moreover, we have examined the legislative history cited by the parties and, although it demonstrates a strong intention to protect Oregon's precious water resource, it does not demonstrate an intention to make a transfer *within a hydrological basin* that results in a use of water in another state an out-of-basin transfer. Thus,

we agree with intervenor and the OWRD that, even if we were to conclude that the provisions relating to out-of-basin transfers were otherwise applicable to temporary out-of-basin transfers, an issue that we need not decide, the transfer of Claim KA-67 was not an out-of-basin transfer.

In view of our conclusion that the provisions relating to out-of-basin transfers do not apply to Temporary Transfer Application T-13673 because that application did not result in an out-of-basin transfer, we limit our conclusion to that issue and do not address or consider the extent to which the out-of-basin transfer provisions might be applicable to temporary transfers of water rights that result in a transfer of diversion points or use of water outside of the hydrological basin. Additionally, we note and emphasize that *any* temporary transfer under ORS 540.523 is to be denied or terminated if it results in injury to other existing water rights. ORS 540.523(2) (requiring that the temporary transfer "will not injure any existing water right"); ORS 540.523(5) (providing that "the department may revoke a prior approval of the temporary transfer at any time if the department finds that the transfer is causing injury to any existing water right").

Our statutory construction analysis disposes of petitioners' first assignment of error, and we conclude that the trial court did not err in denying petitioners' motion for partial summary judgment and in granting intervenor's and OWRD's cross-motion for summary judgment on the issue whether the approved temporary transfer was subject to the provisions for out-of-basin transfers.

We move on to petitioners' contention in their second assignment of error that the temporary transfer approved by the OWRD will cause them "injury." ORS 540.523(2) provides,

> "Notwithstanding the notice and waiting requirements under ORS 540.520, the department shall approve by order a request for a temporary transfer under this section *if the department determines that the temporary transfer will not injure any existing water right*."

(Emphasis added.) *See also* OAR 690-380-8002(2) ("[T]he Department shall issue an order to approve a request for

a temporary transfer under this rule if the Department determines that the temporary transfer will not injure any existing water right."). In the context of a temporary transfer, OAR 690-380-0100(3) states that the term "injury to an existing water right" means that "a proposed transfer would result in another, existing water right not receiving previously available water *to which it is legally entitled*." (Emphasis added.)

The summary judgment record includes evidence that intervenor has not historically used its full legal water right under Claim KA-67, and that a portion of intervenor's use returns to the waterways.[11] Thus, petitioners contend, intervenor's full "paper right under KA-67" for use in the refuge will result in greater use than now occurs and reduce the flow to the waterways which, after the BIA and the Tribes issue their call, will result in less water flow available to petitioners, constituting injury. Petitioners contended in the circuit court that intervenor's transfer should be limited to its "consumptive" use—that is, the water that intervenor has historically consumed under its water right.

The circuit court disagreed, concluding that an increase in intervenor's use to the full "paper value" of the water right did not constitute legally cognizable injury. The court explained:

"An increase in use of water by the holder of water rights, within the limits of a valid water right, does not constitute injury to other water rights regardless of whether that increase in use occurs in conjunction with a transfer."

Based on that reasoning, the court granted intervenor's and the OWRD's motion for summary judgment on petitioners' claim asserting that the transfer would result in "injury."

In their second assignment of error, petitioners challenge the circuit court's legal conclusion, asserting that the determination of "injury" must take into account that the transfer will result in less flow in the waterways:

"[T]he effect of Intervenor's use of KA-67 is limited to the consumptive use portion of the right because of the return

_____

[11] A "return flow" is "water that returns to a stream *** following its diversion and use[.]" OAR 690-012-0020(11).

flows to the Wood River and Crooked Creek. The Final Order changes this relationship. Under the Final Order, the full value of the transferred right is debited from Crooked Creek and the Wood River at the original points of diversion. \*\*\* Thus, whereas historically KA-67's impact on instream flows was limited to the consumptive use portion of the right, the Final Order debits the full value of the transferred right from the stream flows. \*\*\* Practically speaking, this means the Final Order takes more water out of the stream (on paper) than could possibly ever occur if KA-67 were used in full in its original place of use. This results in less water being available to satisfy the Tribal claims, which in turn means more frequent, and more severe, curtailment of Petitioners' water rights."

We conclude that the circuit court did not err. Petitioners' water rights are either junior or equal to intervenor's water right in priority, and a transfer makes no change in priority. Thus, petitioners' alleged deprivation of water as a result of intervenor's use of its full legal water right is simply a feature of the prior appropriation system; it is not an "injury" that is legally cognizable. We conclude for that reason that the circuit court did not err in granting intervenor's and the OWRD's motion for summary judgment on petitioners' claim of injury.

We move on to petitioners' third assignment of error. Temporary transfers of a water right under ORS 540.523 are subject to OAR 690-380-8000, which provides:

"Any person who holds a water use subject to transfer may request that the Department approve:

"(1)   For a period of not to exceed five years, a temporary transfer of:

"(a)   Place of use and, if necessary to convey the water to the new temporary place of use, point of diversion or appropriation; or

"(b)   Character of use of a right to store water[.]"

The parties are in agreement that, in the context of a temporary transfer, under OAR 690-380-8000, a change in the "character of use" of the water is permitted only when the water right is for the storage of water. Here, the transferred water right was not for the storage of water. Claim KA-67

specifies that the purpose of use is "irrigation with incidental livestock watering." The OWRD's final order approving the temporary transfer limited the use of the water "in accordance with the terms and conditions of Claim KA-67," thus, to irrigation and incidental livestock watering. In their third amended petition for judicial review, petitioners for the first time asserted a claim that the OWRD's approval of a transfer of Claim KA-67 nonetheless resulted in a change in the "character of use" of the water right, in violation of OAR 690-380-8000.

The circuit court rejected petitioners' contention, concluding that it had not been timely raised under ORS 183.484(2), which establishes the 60-day deadline for the filing of a petition for review in other than a contested case. But the court also decided the merits of the contention, concluding that the transfer had not resulted in a change in the character of use, because the authorized use of irrigation under Claim KA-67 continued after the transfer.

In their third assignment of error, petitioners contend that the trial court erred in rejecting their "character of use" argument as untimely. They argue that, because the original petition for judicial review was timely, the doctrine of "relation back" allows the later-raised contention to be considered as timely. Petitioners further contend that the trial court erred in rejecting their argument on the merits, asserting that the use to which the water is to be put under the transfer—the irrigation of wetlands for the benefit of wildlife—is different from the agricultural irrigation authorized by Claim KA-67.

We do not address petitioners' "relation back" argument, and we assume without deciding that petitioners' contention was timely. But as did the trial court, we reject it on its merits. It is undisputed that, under Claim KA-67, the authorized character of use is "irrigation *** with incidental livestock watering." The OWRD's final order stated that the authorized character of use at the transferred location is "irrigation *** with incidental livestock watering." By its plain terms, the order did not authorize any change in the character of use. The transfer of Claim KA-67 did not change its character of use.

Petitioners contend that the OWRD's determination that the transfer does not authorize a change in use is a factual one that the circuit court and this court are not bound to accept, and that a record on that fact could have been developed further in the circuit court; therefore, they contend, a question of fact remains that precludes summary judgment. We disagree. No question of fact remains; the question is a legal one concerning whether "irrigation" as stated in Claim KA-67 is limited to agriculture. The water right under Claim KA-67 itself is not limited to irrigation for agriculture. Further, OAR 690-300-0010(26), promulgated by the OWRD, defines "irrigation" as

> "the artificial application of water to crops or plants by controlled means to promote growth or nourish crops or plants. Examples of these uses include, but are not limited to, watering of an agricultural crop, commercial garden, tree farm, orchard, park, golf course, play field or vineyard and alkali abatement."

The rule's text does not restrict irrigation to agricultural uses—in fact, it's list of examples includes non-agricultural uses. In the OWRD's view, irrigation as defined in OAR 690-300-0010(26) includes irrigation of wetland plants for fish and wildlife habitat. The OWRD's construction of its own rule is a plausible one that is owed deference. *See Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994) (explaining that, under ORS 183.482(8)(a), a reviewing court will defer to an agency's interpretation of its own administrative rule if that interpretation is plausible); *Sky Lakes Medical Center v. Dept. of Human Services*, 310 Or App 138, 148, 484 P3d 1107 (2021) (applying standard in review of agency order under ORS 183.484). For that additional reason, we reject petitioners' third assignment of error.

In their fourth assignment of error, petitioners contend that the circuit court erred in failing to consider whether approval of the transfer will result in "waste." Before the OWRD and the circuit court, petitioners argued that the transfer of water rights under Claim KA-67 over some 40 miles of open waterway will necessarily result in waste in the form of evaporation and seepage. Thus,

petitioners contend, the OWRD has approved "waste." *See Bennett v. City of Salem*, 192 Or 531, 544, 235 P2d 772 (1951) ("Unquestionably, an appropriator of water is not entitled to unreasonably waste it. What he appropriates must be devoted to a beneficial use, and he is never entitled to divert more water than is actually put to such use, reasonable transmission losses excepted.").

The OWRD and intervenor responded below and respond on appeal that the order authorizes irrigation, which is a beneficial use and not "waste." *See, e.g., Fort Vannoy Irrigation v. Water Resources Comm.*, 345 Or 56, 87-88, 188 P3d 277 (2008) (discussing elements of "beneficial use" in the context of an irrigation right). The OWRD points out that, in findings that petitioners do not challenge, the OWRD adopted staff findings and conclusions as to the amount of water necessary and appropriate to fulfill a beneficial use of irrigation at the new place of use.

Petitioners concede that waste is not expressly ordered and is not an explicit criterion to be considered under ORS 540.523. But, citing OAR 690-410-0060(1) ("The elimination of waste and improving the efficiency of water use are high priorities. Use of water without waste is required by state statute and the prior appropriation doctrine."); and OAR 690-400-0000(2) ("State water resources policy must promote the maximum beneficial use of the waters of the state."), petitioners contend that waste is an implicit consideration in every approval, because waste is the antithesis of beneficial use, and no waste of water can be approved under Oregon law. Thus, petitioners contend, factual issues relating to waste must be considered in the context of a transfer application and preclude summary judgment.[12]

Intervenor and the OWRD respond that "waste" is not a legal standard that bears on consideration of an application for a temporary transfer under ORS 540.523. Rather,

---

[12] The OWRD notes that, for purposes of assessing civil penalties, "waste" means

"when the quantity of water diverted exceeds the quantity of water required to meet the beneficial use specified in a water right, not including reasonable system losses, return flows, or diversion rates of water allowed in a water right or a rotation agreement."

OAR 690-260-0010(16).

waste is a question of enforcement, and wasting water, like other unlawful uses of water, is regulated by the watermaster. OAR 690-250-0050(1)(d); *see also Bennett*, 192 Or at 545 ("the water master is charged with the duty of preventing wastage of water"). Thus, they contend, a concern relating to waste is one to be brought through enforcement rather than through the approval process.

We agree with the OWRD and intervenor that the trial court did not err in granting their motion for summary judgment on the issue of waste. The OWRD's order did not order waste. Additionally, as intervenor and the OWRD argue, to approve a temporary transfer, the OWRD is required to find that the elements of ORS 540.523 and OAR 690-380-8000 are satisfied. The question of waste is not a part of that determination.[13] Thus, we reject petitioners' fourth assignment of error.

In their fifth assignment of error, petitioners contend that the trial court erred in granting intervenor's and the OWRD's motions for summary judgment, because the OWRD's determination is not supported by substantial evidence relating to injury, waste, and change in character of use. Having concluded, above, that petitioners have not established legally cognizable errors relating to injury, waste, and a change in character of use, we reject the fifth assignment of error.

Affirmed.

---

[13]  We further agree with the OWRD that if the approved transfer results in waste, that is an enforcement issue.